230 A.2d 831.

STATE *vs.* RAYMOND R. JOHNSON.

JUNE 14, 1967.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

KELLEHER, J. After conviction of the defendant by a jury in the superior court on an indictment charging him with possession of heroin in violation of G. L. 1956, §21-28-31, as amended, the defendant's appeal is before us solely on his exception to the denial of his motion to suppress certain evidence obtained by the narcotics inspectors of the department of health during their search of the defendant's residence which was made pursuant to a search warrant issued by a justice of the district court of the sixth judicial district.

The search resulted in the seizure of a quantity of heroin together with a hypodermic needle and syringe.

Two issues are presented herein for our determination: (1) Was the instant warrant issued against defendant without a prior showing of probable cause; and (2) was there an illegal search of defendant's premises which vitiated the validity of the evidence obtained thereby?

In our consideration of this case we make a departure from the established appellate procedures which we deem worthy of comment. The defendant's exception was taken to the denial of his motion to suppress which was made prior to the trial on the instant indictment. In his brief in support of this exception, he cites testimony which was adduced at the trial and not at the preliminary hearing. We do not countenance or approve this procedure. Ordinarily we will consider only that evidence heard by the superior court on defendant's preliminary motion.

However, because of the unique situation of defendant, we will only for this case depart from our established rule. The differences which have appeared between this defendant and the various counsels appointed to represent him both in the district and superior courts have been discussed by us previously in *Johnson* v. *Langlois*, 101 R. I. 178, 221 A.2d 466. On November 6, 1964, when the superior court heard defendant's motion to suppress, he was represented by the public defender. The defendant had, however, for reasons best known to himself, become disenchanted with services provided by the public defender's office. At the time of trial, he refused the proffered assistance of the public defender and conducted his own defense. On this appeal, the public defender is once again appearing in behalf of defendant. It is because of the foregoing circumstances and our abiding concern for the safeguarding of defendant's rights that we will, in examining this exception, consider evidence which was presented both at the hearing

on his motion to suppress and at the actual trial. Our action here, however, shall not be considered as precedent for the future actions by this court.

I

## Probable Cause

In contending that there was no probable cause for the issuance of the search warrant, defendant points to two alleged discrepancies between certain statements contained in an affidavit which was presented to the district court to show the existence of probable cause for the issuance of the warrant and the testimony given by the affiant at the hearing on the motion to suppress and at the actual trial.

The affidavit herein was given by narcotics inspector, James L. Bergin. In the pertinent portions of his affidavit which are before us, inspector Bergin stated that on March 11, 1964, he saw Lewis Baker, a known user of narcotic drugs, enter defendant's home at 2:30 p.m., and leave there at 2:45 p.m. and that on March 13, 1964, at 4:10 p.m., he observed George Fuscellaro, another known user of narcotics, enter defendant's home and leave twenty minutes later.

We have examined the transcript of testimony given— at both the hearing on defendant's motion to suppress and at the trial respectively—with care. The only discrepancy shown in either record is in regards to the time Baker appeared at defendant's home. Inspector Bergin's affidavit states that it was 2:30 p.m., while his testimony given on the motion to suppress places Baker there at 3 p.m. The length of his stay in both instances is, however, the same— 15 minutes.

In our analysis of the record of the trial, we find no discrepancy as to the time Fuscellaro was reported entering defendant's home. It is true that at one point in his testimony inspector Bergin did state that at 4:10 p.m. on March 13, 1964, Fuscellaro was in the Providence police station.

It is obvious, however, from a full reading of the testimony at the trial, that this statement was a momentary oversight on the inspector's part. A thorough study of the record shows that Fuscellaro entered defendant's home more than once on March 13, 1964, and that one of these times was at 4:10 p.m. A detective from the Providence police department testified at the trial that he observed Fuscellaro in this neighborhood throughout that particular afternoon. In fact, he placed him in this area at 4 p.m. This officer told the court and jury that he arrested Fuscellaro at about 8 p.m. on that day.

The only discrepancy shown in the record is the half-hour difference in the time when Baker went to defendant's premises, which variance is not fatal to the validity of the warrant. This court will not impose on a law enforcement agency—particularly when it is actively engaged in the execution of a search warrant—a demand for the kind of pinpoint accuracy sought when a surgeon wields his scalpel. In *State* v. *LeBlanc*, 100 R. I. 523, 217 A.2d 471, we reaffirmed the principle as stated in *United States* v. *Ventresca*, 380 U. S. 102, 13 L.Ed.2d 684, 85 S.Ct. 741, that the affidavit for a search warrant must be tested in a "common-sense and realistic fashion." In *Rugendorf* v. *United States,* 376 U. S. 528, 11 L.Ed. 887, 84 S.Ct. 825, it was held that factual inaccuracies which are of "peripheral relevancy" and "did not go to the integrity of the affidavit" will not invalidate a warrant.

Here whether it was at 2:30 p.m. or 3 p.m. when Baker was seen entering defendant's domicile was only the slightest peripheral relevancy referred to in *Rugendorf*. It still remains that inspector Bergin saw Baker enter defendant's residence at or near the time set forth in his affidavit. The defendant's visitor was admittedly an individual with an extensive criminal record of narcotic violations. In addition to Fuscellaro, the inspector's affidavit listed a third known

narcotics user as having entered defendant's home at 3 p.m. on March 13, 1964. Inspector Bergin also gave oath that he was told by a confidential informer, who had been found to be reliable, that the informer had seen and purchased heroin from defendant at this address. Having in mind all these factors, it is clear beyond question that the half-hour difference, which has been referred to herein, in no way taints the integrity of the officer's affidavit. We therefore find a superabundance of probable cause which justified the issuance of the instant warrant.

## II

## The Search

The defendant's claim for suppressing the evidence is that the search was both illegal and unreasonable.

In arguing these grounds, defendant points to the admitted fact that the two other narcotic inspectors, who together with inspector Bergin formed the search party here, entered defendant's premises by forcing the rear door of defendant's first floor tenement a short time after he had answered inspector Bergin's ringing of the front doorbell. These two inspectors traveled from the rear of the house, through the first floor, to the front porch where their associate had detained defendant. The defendant argues that the search became illegal at the moment the two inspectors entered the kitchen because the search warrant had not as yet been read to defendant. We disagree.

The search of defendant's premises occurred in 1964 pursuant to the provisions of G. L. 1956, §21-28-37.[1] Nowhere therein is there any provision which imposes on an officer executing a search warrant the obligation to read the war-

---

[1]The above-statutory reference was applicable to the issuance of a search warrant on March 16, 1964. This provision was repealed by the enactment of chap. 168 of P. L. 1965 which made uniform the issuance of a search warrant in this state. It is noted, however, that the later statute does not require the reading of the warrant.

rant to the persons whose premises are to be searched. The statute is silent in this regard. Absent a provision requiring a reading, the warrant is executed by the making of the search. See 1 Varon, Searches, Seizures and Immunities, chap. 7 §3(a), p. 373, and the cases cited therein.

Failing in this regard, defendant argues that the search, though pursuant to a search warrant, was conducted in an unreasonable manner contrary to the provisions of art. I, sec. 6, of the Rhode Island constitution and the fourth amendment to the federal constitution. The search is unreasonable, defendant says, because of the admitted forced entry of the two agents at defendant's back door. In considering the merits of this phase of defendant's defense, we must review the record. Inspector Bergin received information in late February 1964 that defendant was selling heroin in his house. As a result of this discovery, the inspector and his immediate chief, inspector George E. Trainor, kept defendant and his house under surveillance throughout the month of March up until the time of the search. During this period, known drug addicts were observed visiting defendant's home at 14 Duncan avenue. The defendant lived here together with his aunt and uncle.

On March 16, 1964 at 8 p.m. inspectors Bergin, Trainor and Malcom T. Brown arrived at defendant's home. Acting according to a preconceived plan, Bergin, who had the search warrant in his possession, went to the front door. Trainor and Brown took a position at the rear door just outside defendant's kitchen. Bergin rang the front doorbell. The defendant entered the front hall and put on a light. He was rather indignant and wanted to know who was ringing the bell. As he opened the door, defendant took a package from his shirt pocket and threw it behind the door. Inspector Bergin testified that he showed defendant his identification and informed him he had a search warrant. He grasped defendant by the left wrist, brought

him onto the porch, turned him around so he faced the porch wall and held him there at gunpoint. At this time, defendant's aunt came to the front door to see, as the transscript states, what was causing the "raucaus." Bergin told the aunt to go to the kitchen door and let in the other two inspectors. The aunt was on her way to the kitchen when the inspectors entered and proceeded through the house to the porch. The aunt said the agents broke down the door. Inspector Trainor said he pried open the door. Whether the door was broken down or pried is a question of degree. What is clear is that inspectors Trainor and Brown entered defendant's kitchen by means of a forced entry. Consequently, the issue is: Does this entry change a search which was reasonable into one which was unreasonable?

When the Supreme Court extended the exclusionary evidence rule to the states in *Mapp* v. *Ohio*, 367 U. S. 643, 6 L.Ed.2d 1081, 81 S.Ct. 1684, it did not attempt to define what standard of reasonableness would be applied to test the validity of a search warrant. In *Ker* v. *California*, 374 U. S. 23, 10 L.Ed.2d 726, 83 S.Ct. 1623, the court said, "* * * standards of reasonableness under the Fourth Amendment are not susceptible of Procrustean application" and this rule "is carried forward when the Amendment's proscriptions are enforced against the States through the Fourteenth Amendment."

In this state there are no statutory formalities prescribed for the execution of a search warrant. We therefore follow the common-law requirement that, in the absence of some special exigency, before an officer can break into and enter one's home he "* * * ought to signify the cause of his coming, and to make request to open doors * * *." *Semayne's Case*, 5 Co. Rep. 91a, 77 Eng. Rep. 194; *Read* v. *Case*, 4 Conn. 166. This rule is now embodied in the federal statutes and appears in the legislative enactment of at least 29 states. See Blakey, The Rule Of Announcement

And Unlawful Entry: Miller v. United States And Ker v. California, 112 U. Pa. L. Rev. 499.

The length of time an officer must wait before breaking in after an announcement must be reasonable in the light of the circumstances in the particular case. *United States v. Rabinowitz,* 339 U. S. 56, 94 L.Ed. 653, 70 S.Ct. 430. However, this rule has often been made subject to qualifications and exceptions so that by judicial decision, even in those states where the requirement is statutory, an announcement and demand are not requisite to the execution of a search warrant where facts make it evident that the officer's purpose is known, or where it would frustrate the search, or increase the peril of the officer, or permit the destruction of evidence. If the exigencies of the situation require entry without notice and demand, force may be used to break and enter under the authority of a valid search warrant. If such a situation arises, the search is reasonable notwithstanding the forced entry. What must be considered is the balancing of the individual's right to privacy and the public's interest in the prevention of crime and the apprehension of criminals.

As the court said in *Harris* v. *United States,* 331 U. S. 145, 91 L.Ed. 1399, 67 S.Ct. 1098, "This court has also pointed out that it is only unreasonable searches and seizures which come within the constitutional interdict. The test of reasonableness cannot be stated in rigid and absolute terms. 'Each case is to be decided on its own facts and circumstances.'" A realistic criterion to be applied here is found in *State* v. *Miller,* 47 N. J. 278, 220 A.2d 409, 411. There the court held that when confronted with the question as to the reasonableness of a search, a court should measure the totality of circumstances against the constitutional standard of reasonableness. In gauging totality, we must look at defendant and his past history, the crime with which he is charged and what is being sought in the search.

In determining the reasonableness of his actions, we are quite aware that a law enforcement officer, when engaged in the performance of his duties, must act on a quick appraisal of the facts before him without the benefit of the hindsight which is usually possessed by those reviewing his actions.

A review of all facets of the instant case shows that the inspectors were dealing with a defendant who is the possessor of a lengthy criminal record. He has been imprisoned on numerous occasions for violation of the narcotic laws. At the time of his arrest on March 16, 1964, he was in a parole-like status from the federal penal system, having served a portion of a ten-year sentence at a federal penitentiary in Atlanta for possession of heroin. The defendant admitted that he had been in prison for over a year because of a crime of violence. Inspector Trainor, the state's senior narcotics inspector, told the court and jury that he had known this defendant for several years.

Inspector Bergin, a veteran of 14 years' experience in the enforcement of the state's narcotic laws, described defendant as protesting on the front porch and that in his opinion defendant was ready to move off the porch and out of the area. He gave a graphic description of the atmosphere which pervaded the premises on the evening in question. The inspector testified that defendant's aunt came out to the porch to see what was causing the "raucaus." Whether it was a "raucaus," as set forth in the transcript, or a ruckus, it is obvious that there was something less than a cathedral-like silence surrounding defendant's appearance on the porch.

The narcotic being sought from defendant was heroin. The exigencies present in a search for this type of item required the element of surprise and alacrity for, if the opportunity is given, this type of evidence may be easily destroyed. We have examined the 12 glassine packets of he-

roin which were recovered by inspector Bergin from the package defendant threw behind the front door. Heroin is a white powder. It blends easily with sugar in a sugar bowl or salt in the salt shaker. With the convenience of modern plumbing, within a matter of moments, heroin can be washed down the sink or flushed down the toilet.

Because of all these factors which we have set forth herein and which are apparent in the instant record, we are of the opinion that the inspectors' entry into the defendant's kitchen and their travel to his front porch was amply justified. They were involved with a known criminal who had a past record of violence. That inspector Bergin was in a perilous situation cannot be questioned. The probability that the heroin would be destroyed in and of itself demanded prompt action. In all the circumstances the method of entry was not unreasonable or illegal. The evidence seized was properly admitted into evidence.

The defendant's exception is overruled and the case is remitted to the superior court for further proceedings.

*Herbert F. DeSimone*, Attorney General, *Donald P. Ryan*, Special Assistant Attorney General, for plaintiff.

*Leo Patrick McGowan*, Public Defender, *William F. Reilly,* special counsel, for defendant.