THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* ELIZABETH BROWN, DONNA MAGNOTTA and PATRICIA STOCKWELL, Appellants.

Third Department, April 20, 1970.

*Donald J. Shanley* for Elizabeth Brown, appellant.

*Jerome K. Frost* for Donna Magnotta, appellant.

*Thomas J. O'Connor, Rensselaer County Public Defender,* for Patricia Stockwell, appellant.

*Con G. Cholakis, District Attorney (Richard P. Wallace* of counsel), for respondent.

GREENBLOTT, J. These are appeals from judgments of the County Court of Rensselaer County, rendered December 28 and 29, 1967, adjudging defendants to be youthful offenders.

On October 7, 1966, Mrs. Miele was awakened by a noise coming from the backyard of the house in Troy, New York which she and her husband owned. Mr. Miele went down to investigate and returned to bed when he found nothing. They later heard a pounding noise coming from in or near a basement apartment which they rented to one Mary Gordon. Mrs. Miele then called the police. The noise had ceased before Officers Mantello and O'Brien arrived shortly after 6:00 A.M. When O'Brien knocked several times on a door leading into a hallway which in turn led to the tenant's apartment, Miss Gordon opened the door. One of the officers informed her of the complaint and asked if it would be all right to step inside and talk to her about it. According to the officers, Miss Gordon replied that it was all right to do so.

When the officers and Mrs. Miele stepped into the hallway, the inner door to the Gordon apartment was open. Mrs Miele asked the police officers to check the apartment. At O'Brien's suggestion that she get her husband, she did so. The officers then informed Mr. Miele that he could look around the apartment since he wished to determine if his property had been damaged. Mantello testified that he gave Mr. Miele his flashlight, and the latter began walking through the apartment with the police officer following about five feet behind. In a room toward the rear of the apartment, Mr. Miele saw some of his tools and then observed a blanket covering a large object. He removed the blanket and found a safe. The blanket covering the safe could not be seen from the living room of the apartment. Although the officers had no warrants and did not know that the safe was stolen, they placed Miss Gordon and appellants, who were also present in the apartment, under arrest. The testimony is confusing and unclear as to whether the charges made at the time were disorderly conduct or withholding stolen property.

At any rate, an information was laid against appellants charging them with aiding and abetting Mary Gordon in con-

cealing and withholding stolen property. The trial court denied a motion to suppress and also denied a motion for reargument. The appellants were tried as youthful offenders, found guilty and sentenced.

We answer the threshold question whether guests of a tenant on premises with the tenant's permission have standing to challenge a search of the tenant's apartment in the affirmative. In *Jones* v. *United States* (362 U. S. 257) the Supreme Court held that a defendant who was present in a friend's apartment with the latter's permission had standing to challenge the search and seizure of narcotics found in the apartment. Two grounds were relied upon: (1) the circumstance that conviction flowed from possession was sufficient to confer standing; (2) anyone legitimately on the premises where a search occurs may challenge its legality when its fruits are proposed to be used against him. In *Mancusi* v. *De Forte* (392 U. S. 364) the Supreme Court held that the second ground set forth in *Jones* (*supra*) was sufficient in itself to confer standing. A person need not have a possessory interest in the premises in order to have standing. As guests of the tenant, appellants could reasonably expect that the apartment was an area in which there would be no governmental intrusion.

The trial court denied both the motion to suppress and the motion for reargument on the ground that the search which discovered the safe was made by the landlord and therefore constituted a private search.

While it is true that the constitutional protection against unreasonable searches has no application to searches made by private individuals (see *People* v. *Horman*, 22 N Y 2d 378, cert. den. 393 U. S. 1057), the problem lies in the application of this rule to particular factual situations. In the case at bar, entry into the apartment even if made with permission of the tenant as contended by the police officers, was at best made under color of police authority. (See *State* v. *Scrotsky*, 39 N. J. 410.) It was they who knocked on the outside door and requested entry to discuss the landlady's complaint. When Mrs. Miele asked the officers to check the building, they suggested that she get her husband. When he arrived, the officers told him that it would be all right for him to search the apartment. When Miele did so, Officer Mantello followed closely behind him. In our opinion, the police participated in the search. The mere fact that it was the landlord who discovered the safe did not change the search into a private one. (*Moody* v. *United States*, 163 A. 2d 337 [D. C.].) When the safe was discovered, it was a police officer who evaluated the evidence,

further indicating police participation. (See *Lustig* v. *United States,* 338 U. S. 74.)

We cannot agree with the decision of the trial court that this was a private search. A private search would have taken place if the landlord had searched the apartment before calling the police, and discovered the safe and then reported his discovery to the police. To contend that the search was private because the landlady called the police in the first instance, and because the landlord removed the blanket covering the safe, ignores the realities of the situation. *People* v. *Gallmon* (19 N Y 2d 389, cert. den. 390 U. S. 911) and *People* v. *Gatti* (29 A D 2d 617), urged by the respondent, are inapposite. *Gatti* (*supra*) involved an entry made due to a fire emergency, and once the entry was made, the evidence seized was in open view. *Gallmon* (*supra*) involved an investigatory entry made in response to a complaint as to a disturbance. The fact that a rooming house was involved rather than rented premises made a critical difference in that decision. Moreover, once the entry was made, the evidence was in open view.

Since the motion to suppress the safe and its contents should have been granted, the remaining evidence is legally insufficient to sustain the convictions.

The judgments should be reversed, on the law and the facts; the order denying the motion to suppress certain evidence reversed, the motion granted, and the indictments dismissed.

HERLIHY, P. J., STALEY, JR., COOKE and SWEENEY, JJ., concur.

Judgments reversed, on the law and the facts; order denying motion to suppress certain evidence, reversed, motion granted, and indictments dismissed.