UNITED STATES of America, Appellee,

v.

James WRIGHT, Appellant.

No. 897, Docket 71-1737.

United States Court of Appeals, Second Circuit.

Argued July 14, 1972.

Decided Sept. 5, 1972.

Alan F. Scribner, New York City (Albert J. Krieger, Ivan S. Fisher, New York City, on the brief), for appellant.

Carter LaPrade, Asst. U. S. Atty. (Whitney North Seymour, Jr., U. S. Atty. S. D. N. Y., Peter F. Rient, Asst. U. S. Atty., on the brief), for appellee.

Before FEINBERG, MULLIGAN and OAKES, Circuit Judges.

FEINBERG, Circuit Judge:

James Wright appeals from a judgment of conviction entered in the United States District Court for the Southern District of New York after a jury trial before Judge Thomas F. Croake. Appellant was found guilty on two counts of receiving, concealing and facilitating the transportation and concealment of heroin, in violation of 21 U.S.C. §§ 173, 174. He was sentenced to concurrent ten-year terms of imprisonment and fined a total of $1,000. On this appeal, Wright asserts that various exhibits of cocaine were erroneously admitted into evidence at his trial and further seeks to raise for the first time a cluster of issues concerning the legality of a wiretap employed in connection with this case. For the reasons set forth below, we affirm.

Some extended background information is necessary to put appellant's legal claims in proper context. During part of 1969 and most of 1970, federal agents of the Bureau of Narcotics and Dangerous Drugs (BNDD) in Pennsylvania and New Jersey had been surveilling Eugene Lawson, who was believed to be a heavy narcotics trafficker. In the spring of 1970, wiretaps were authorized for telephones located at Lawson's place of business in Philadelphia and at his home in Atco, New Jersey. Those taps, and other information, linked Lawson to several major narcotics violators in the Philadelphia area. The taps also disclosed several conversations from Lawson's phones to various persons (including a "Jimmy") at a Manhattan telephone number listed to Dolores Glover.[1] On September 21, 1970, another wiretap was authorized for a telephone at Lawson's home, this time on an unlisted private line that had not been previously tapped. As a result of this tap, on October 5, 1970, a conversation was overheard with a "Mickey" at the Glover telephone number. A female voice, calling that number, stated that "Gene" Lawson would pick up narcotics in New York "tonight." Thereafter, according

1. Glover is a co-defendant. The district court granted the Government's motion to sever her trial since she was, and apparently still is, a fugitive.

to the affidavit for a search warrant of the Glover apartment:

> continuous surveillance was maintained on Eugene Lawson. He was followed to New York today, October 6, 1970, where he proceeded to 146 West 120th Street, and entered Apartment 5 [the Glover apartment]. He was not carrying anything. Lawson later emerged carrying a shopping bag which he placed in the trunk of his car. Lawson was then followed through New York and onto the New Jersey Turnpike where he was arrested. On his person was approximately 33 grams of heroin, approximately 5 grams of what appeared to be cocaine. The shopping bag in the trunk contained mannite and quinine.

Following Lawson's arrest, BNDD agents, relying on the affidavit reciting the above and additional information, obtained a search warrant for the Glover apartment in Manhattan. The agents arrived there the same evening, at about 8:15 P.M., knocked on the door, identified themselves and stated that they had a search warrant. According to the Government's witnesses, whose testimony we must now credit, the agents were not admitted, but they heard shuffling sounds and a flushing toilet. At that point, the agents forced open the apartment door and arrested appellant Wright, who was standing in the bathroom, his hands and arms covered with white powder. Cocaine was found floating in the toilet bowl and mannitol was found sprinkled about the rim. A small tinfoil packet containing .22 grams of heroin (Count 4) was in Wright's pocket, three envelopes containing 42.7 grams of heroin were on the kitchen table (Count 3) and six envelopes containing 21.37 grams of heroin were found in a paper bag pinned inside a jacket in the bedroom (Count 5). Cocaine in a foil wrapper and lying as a "loose powder" was found on the kitchen table; 70.99 grams of cocaine were also found in a hall closet. Over $8,000 in cash was uncovered, along with two sets of measuring scales, six bottles of quinine, several hundred mannite cubes and 15 boxes, each containing 1,000 glassine envelopes.

## A. Admission of the Cocaine Exhibits.

The indictment against appellant contained seven counts; three counts related to heroin (Counts 3, 4 and 5) and three related to cocaine (Counts 1, 2 and 6).[2] The Government successfully moved to sever the cocaine counts and, in fact, consented to their dismissal after it had rested on the heroin counts. Appellant, then, was tried on the three heroin counts and convicted on two of them.[3] In presenting its case on the heroin counts, however, the Government —over appellant's objections—was permitted to introduce various exhibits consisting of the cocaine found in the apartment. Appellant renews his objections here, claiming that the "identification of the exhibits as cocaine was entirely unnecessary and prejudicial." We do not agree.

■ Obviously, the Government may not introduce evidence of acts amounting to separate crimes merely to establish that defendant is a "bad man." McCormick, On Evidence § 157 (1954). But the amounts of cocaine found throughout the apartment in which appellant was arrested were relevant for other, legitimate purposes. The Government could reasonably anticipate that the defendant would take the position that he was an unknowing visitor to premises he had no idea were being used for illegal distribution of narcotics. Indeed, appellant testified along those lines when he took the stand in his own defense. Evidence of the large quantities of different narcotics and narcotic dilutants was relevant to prove affirmatively that there could be no reasonable mistake or inadvertence on the part of someone in that apartment. See United

---

2. The seventh count, a conspiracy count, "remains open." Appellee's brief at 2 n.*.

3. The jury was unable to agree on a verdict on Count 5; with the Government's consent, that count was then dismissed.

States v. Kaufman, 453 F.2d 306, 310–311 (2d Cir. 1971); United States v. Ross, 321 F.2d 61, 67 (2d Cir.), cert. denied, 375 U.S. 894, 84 S.Ct. 170, 11 L.Ed.2d 123 (1963). Moreover, appellant was charged with receiving, concealing and facilitating the transportation and concealment of narcotics. The cocaine exhibits were relevant for purposes of showing preparation and planning. See United States v. Fisher, 455 F.2d 1101, 1103–1104 (2d Cir. 1971). We recognize that relevance alone does not of itself dictate admission of evidence that might also be unfairly prejudicial. But we cannot say that the district judge abused his discretion in admitting this highly probative evidence.

B. The Wiretap Issues.

Appellant raises a number of issues concerning the September 21, 1970 wiretap order, authorizing a tap on a private phone in the New Jersey home of Eugene Lawson. In particular, appellant claims that the wiretap statute is unconstitutional on its face, that the authorization for the particular tap failed to conform to the requirements of 18 U.S.C. § 2516(1), and that there was insufficient probable cause to support the order since all of the information in the supporting affidavit was "stale." Appellant asserts standing to raise these issues by claiming that the evidence seized through the wiretap formed the basis for the probable cause supporting the search warrant for the Glover apartment.

▮ Not one of these issues was raised before, during, or after the trial, although various motions directed at suppressing evidence were made on a variety of grounds. The failure to press these claims in the district court is all the more striking since Wright did not overlook the possibility that the search warrant might be subject to attack on the basis of a wiretap. Wright specifically reserved his right to raise that basic issue pending discovery of information concerning wiretaps, but after receiving it failed to move to suppress.

Therefore, under United States v. Indiviglio, 352 F.2d 276 (2d Cir. 1965) (en banc), cert. denied, 383 U.S. 907, 86 S.Ct. 887, 15 L.Ed.2d 663 (1966), appellant has no absolute right to have us rule upon these issues raised for the first time on appeal. Moreover, even in the exercise of our discretionary powers to notice "plain error," we do not think that we should deal with these issues now. It is fair to say that the facial unconstitutionality of the wiretap statute does not leap from the pages of the United States Reports. The question is "at least sufficiently close" to take it out of the realm of plain error. United States v. Manning, 448 F.2d 992, 1002 (2d Cir.), cert. denied, 404 U.S. 995, 92 S.Ct. 541, 30 L.Ed.2d 548 (1971). At least the same may be said for the question of probable cause, which appears at best to be a weak argument on this record. As to the propriety of the Attorney General's authorization, in view of the actual facts now made clear in this court appellant's claim is foreclosed by our recent decision in United States v. Pisacano, 459 F.2d 259 (2d Cir. 1972). See also United States v. Becker, 461 F.2d 230 (2d Cir. 1972). Finally, it should be noted that the suggestion of plain error as to any of these claims is undercut by the substantial unresolved question of appellant's standing to raise them. The search was of Glover's apartment in New York City. Since appellant was lawfully there at the time and evidence uncovered by the search was used against him, he does have standing to challenge the search warrant itself as based upon insufficient probable cause. Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960). But it does not follow that appellant may go one step further back and assert Lawson's fourth amendment rights simply because information from a tap on Lawson's phone in New Jersey, obtained as part of an investigation not aimed at appellant, was used to justify the warrant to search Glover's apartment. Cf. 18 U.S.C. §§ 2510(11), 2518(10)(a). Also, although appellant

may have been the "Jimmy" overheard in some of the conversations seized under authority of the wiretap orders issued in the spring of 1970, appellant does not attack those orders. And nothing in the record suggests that he was a party to any conversation seized under authority of the challenged September 1970 order, or that, if he were a party to such a conversation, that conversation was actually used to obtain the October search warrant. In short, this case demonstrates vividly why it is imperative to insist that issues be properly raised in the district court so that their merits may be discussed and resolved on a full record.

Judgment affirmed.