314 A.2d 144.

STATE *vs.* PHILLIP D. CARUFEL.

FEBRUARY 1, 1974.

PRESENT: Roberts, C. J., Paolino, Joslin, Kelleher and Doris, JJ.

ROBERTS, C. J. The defendant here, Phillip D. Carufel was indicted on October 8, 1968, for possession of cannabis in violation of G. L. 1956, §21-28-31, as amended by P. L. 1962, ch. 110, sec. 1. A pretrial motion to suppress was denied. At a trial before a justice of the Superior Court sitting with a jury in April of 1969, the state introduced the cannabis into evidence over the defendant's objection. He was subsequently found guilty and sentenced to serve two years at the Adult Correctional Institutions.

After a hearing on defendant's bill of exceptions, this court remitted the case to the Superior Court for a limited evidentiary hearing to determine whether the admission of the cannabis into evidence at the trial was in violation of defendant's constitutionanl rights. *State* v. *Carufel,* 106 R. I. 739, 263 A.2d 686 (1970). We did this on the ground that the reason for the objection at the trial was different from that raised at the suppression hearing. Since the trial justice was not aware that defendant was objecting for reasons other than those argued and decided at the hearing on the motion to suppress, he overruled the objection in the belief that the denial of that motion was binding at the trial on the merits. We reasoned that under *Fay* v. *Noia,* 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963), *Henry* v. *Mississippi,* 379 U.S. 443, 85 S.Ct. 564, 13 L.Ed. 2d 408 (1965), and *State* v. *Leavitt,* 103 R. I. 273, 237 A.2d 309 (1968), the peculiar circumstances of this case warranted defendant's being given an opportunity to claim constitutional error on review even though this question was not adequately raised at trial.

The hearing was held on May 12, 1970, and the trial justice, after hearing the evidence, concluded that defendant's constitutional rights were not violated by the admission of cannabis into evidence at the trial. The defendant is now before this court pressing a bill of exceptions to that ruling.

In March of 1968, Leo John Gracik, Jr., senior narcotics inspector for the Department of Health, had Mary Sweetland's first-floor apartment at 733 Pine Street in Central Falls under surveillance. On March 13, 15, 22, 23, 24, 27, and 29, with the aid of binoculars and a spotting scope, her apartment was under observation from a second-floor apartment across the street. On March 15 and 24 a number of persons, including defendant, were observed sitting

on the living-room floor rolling cigarettes and lighting them "in a fashion that marihuana is taken, smoked."

As a result of this investigation, at approximately 8 or 9 p.m. on March 29, 1968, Inspector Gracik obtained a warrant to search Mary Sweetland's apartment for narcotic drugs. Inspector Gracik then returned to the apartment across the street and waited until a crowd gathered in her apartment. At about 11:45 p.m. Inspector Gracik, together with other law-enforcement officials from his own department and the Central Falls police department, executed the search warrant.

When Inspector Gracik entered the apartment building, the outer door leading to a common hallway was wide open. The door leading off this hallway into Mary Sweetland's apartment was ajar two inches. Inspector Gracik knocked on this door and almost simultaneously pushed it open while announcing: "The State Narcotics Inspectors. We have a search warrant. You're under arrest." Upon entering the apartment, he found approximately 30 people on the premises. Inspector Gracik saw defendant and "latched onto [him]" and "put him against the wall." Before Inspector Gracik could search defendant, he saw him pull his hand out of his pocket and discard an aluminum foil packet which contained "hashish." The trial justice on remand found that the packet was "abandoned" and in "plain view" when Inspector Gracik picked it up from the floor. As a result of the search of Mary Sweetland's apartment, six to eight pieces of hashish and two plastic bags of marijuana were uncovered.

It is not disputed that a valid search warrant was issued to search the premises of Mary Sweetland. The defendant argues, however, that the search warrant was not properly executed because Inspector Gracik failed to knock and announce his purpose and wait a reasonable time before entering the apartment. In this state we follow the com-

mon-law rule that an officer must first knock and announce his identity and purpose and wait a reasonable period of time before he may break and enter into the premises to be searched. *See State* v. *Johnson,* 102 R. I. 344, 230 A.2d 831 (1967). As was noted in *Johnson,* this rule is subject to certain qualifications and exceptions when there are exigent circumstances. An officer need not knock and announce when doing so will lead to destruction of the evidence or increase the peril to the safety of the officers or others, where persons on the premises will escape, and, finally, where the facts make it evident that the officer's purpose is known to those against whom the search warrant is directed. *Id.* at 352, 230 A.2d at 835-36.

Although the origin of this rule, which is applicable to both arrest and search warrants, is rooted in the common law, the rule itself has constitutional dimensions. The knock and announce requirement is embodied in the fourth amendment and thus applicable against the states through the fourteenth amendment. *See Ker* v. *California,* 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963), and *Sabbath* v. *United States,* 391 U.S. 585, 88 S.Ct. 1755, 20 L.Ed.2d 828 (1968). *See also State* v. *Dusch,* Ind., 289 N.E.2d 515 (1972).

The obvious purpose of this rule is to insure that an individual's right to privacy will not be arbitrarily violated. An individual should be given an opportunity to be apprised of an officer's authority and of the purpose for which he seeks to gain entrance to his home and be allowed the opportunity to voluntarily admit the officer into his home. A less obvious, but equally important, purpose for this rule is to protect the officer himself. The unannounced breaking and entering into a home could quite easily lead an individual to believe that his safety was in peril and cause him to take defensive measures which he otherwise would not have taken had he known that a warrant had

been issued to search his home. *See Miller* v. *United States*, 357 U.S. 301, 313 n. 12, 78 S.Ct. 1190, 1198 n. 12, 2 L.Ed.2d 1332, 1340 n. 12 (1958); *McDonald* v. *United States*, 335 U.S. 451, 460-61, 69 S.Ct. 191, 195-96, 93 L.Ed. 153, 161 (1948) (Jackson, J., concurring); *State* v. *Mendoza*, 104 Ariz. 395, 454 P.2d 140 (1969). *See also* Sonnenreich & Ebner, *No-Knock and Nonsense, An Alleged Constitutional Problem*, 44 St. John's L. Rev. 626 (1970); Blakey, *The Rule of Announcement and Unlawful Entry: Miller* v. *United States and Ker* v. *California*, 112 U. Pa. L. Rev. 499 (1964); Note, *Announcement in Police Entries*, 80 Yale L. J. 139 (1970).

The state argues that the warrant was properly executed because there was a "probability that the marijuana would be destroyed" if the officers knocked, announced their purpose, and waited a reasonable period of time before entering the premises. It refers to testimony by Inspector Gracik that speed is essential in cases of this type in order "to prevent the grass from being flushed down the toilet."

The state relies exclusively on *State* v. *Johnson, supra,* for the proposition that the unannounced entry was reasonable. *Johnson,* however, is distinguishable. The only similarity between this case and *Johnson* is that they both involved searches for narcotic drugs. In *Johnson,* unlike this case, the officers who were authorized to serve the warrant were confronted with the fact that Johnson had a lengthy criminal record and had been imprisoned on numerous occasions for violation of the narcotic laws. Johnson also had been convicted of a crime of violence. It is important to note that in *Johnson* the officers who forced their way through the rear entrance did not do so until they heard a commotion at the front of the house where another officer was attempting to serve the search warrant. Furthermore, the officer who did serve the warrant rang the front door bell and waited until Johnson

opened the door. It was not until the commotion ensued that officers at the rear of the house forced open the back door.

The state places undue reliance upon dicta in *Johnson* to the effect that "[t]he probability that the heroin would be destroyed in and of itself demanded prompt action." *State* v. *Johnson, supra* at 354, 230 A.2d at 837. Were this language interpreted to mean that when a warrant is issued to search for narcotics or, for that matter, any easily disposable item, the officers authorized to execute the warrant were not required to knock and announce prior to entry, the *Johnson* decision would, in effect, sanction a no-knock entry in all such cases. Such a drastic departure from the common law was not intended by that language.

As was noted in *Johnson*, " 'only unreasonable searches and seizures * * * come within the constitutional interdict.' " *Id.* at 352, 230 A.2d at 836, quoting *Harris* v. *United States,* 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399 (1947). *See also Cady* v. *Dombrowski,* 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973). We stated also "* * * that when confronted with the question as to the reasonableness of a search, a court should measure the totality of circumstances against the constitutional standard of reasonableness." *State* v. *Johnson, supra* at 352, 230 A.2d at 836.

In totality, the only fact present in this case offered in justification for the unannounced entry is that the search involved narcotic drugs, which are easily disposable. This fact alone does not justify an unannounced entry. Unlike *Johnson*, there is no evidence in the record that Carufel or anyone else on the premises of Mary Sweetland's apartment had a lengthy criminal record involving numerous violations of the narcotic laws or had been convicted of a crime of violence. Nor is there any other evidence in the

record to indicate that the circumstances justified an unannounced entry.

In *People* v. *Gastelo,* 67 Cal.2d 586, 432 P.2d 706, 63 Cal. Rptr. 10 (1967), it was argued that an unannounced forcible entry is always reasonable in narcotics cases. Mr. Chief Justice Traynor, speaking for a unanimous court, held that the asserted general propensity of narcotics violators to destroy evidence when confronted with police officers was insufficient to justify an unannounced entry. In reaching this decision the court stated: "Under the Fourth Amendment, a specific showing must always be made to justify any kind of police action tending to disturb the security of the people in their homes. Unannounced forcible entry is in itself a serious disturbance of that security and cannot be justified on a blanket basis. Otherwise the constitutional test of reasonableness would turn only on practical expediency, and the amendment's primary safeguard—the requirement of particularity—would be lost. Just as the police must have sufficiently particular reason to enter at all, so must they have some particular reason to enter in the manner chosen." *Id.* at 588-89, 432 P.2d at 708, 63 Cal.Rptr. at 12.

In *State* v. *Mendoza, supra,* the court held that there must be substantial evidence which would cause the officers to believe that such evidence would be destroyed if their presence were announced. The mere presumption that it would be destroyed because it could be easily done is insufficient. *See also United States* v. *Pratter,* 465 F.2d 227 (7th Cir. 1972); *Meyer* v. *United States,* 386 F.2d 715 (9th Cir. 1967); *State* v. *Dusch, supra.*

In this case it should be pointed out that Inspector Gracik neither was refused admittance[1] nor heard persons on the premises running and flushing toilets or other

---

[1] *Cf. Dylon* v. *State,* 250 A.2d 383 (Del. 1969).

sounds which would indicate that drugs were being destroyed.[2]

Since we find that the mere fact that narcotic drugs are easily disposable is not sufficient to justify the manner in which Inspector Gracik entered Mary Sweetland's apartment, the execution of the warrant was unreasonable and, therefore, in violation of the fourth amendment.

It can reasonably be inferred that defendant was lawfully on the premises of Mary Sweetland as her guest and with her consent. *See State* v. *Cadigan,* 249 A.2d 750 (Me. 1969). This being so, defendant had standing to raise the validity of the execution of the search warrant. *See Jones* v. *United States,* 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960); *State* v. *Jardine,* 110 R. I. 491, 293 A.2d 901 (1972).[3]

Accordingly, the defendant's objection to the admission of the cannabis was proper, and it was error for the trial justice to have overruled this objection because the cannabis seized was the fruit of an unconstitutional search and seizure. *See Alderman* v. *United States,* 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969); *Wong Sun* v. *United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

The defendant's exception is sustained, the judgment is reversed, and the case is remitted to the Superior Court for further proceedings.

---

[2]*Compare Commonwealth* v. *Dial,* 445 Pa. 251, 285 A.2d 125 (1971), *with Commonwealth* v. *DeMichel,* 442 Pa. 553, 277 A.2d 159 (1971).

[3]*See also United States* v. *Wright,* 466 F.2d 1256 (2d Cir. 1972); *United States* v. *Scheffer,* 463 F.2d 567 (5th Cir. 1972); *United States* v. *King,* 305 F.Supp. 630 (N.D. Miss. 1969); *Lindsey* v. *State,* 488 P.2d 935 (Okla.Crim. 1971); *People* v. *Brown,* 34 A.D.2d 108, 309 N.Y.S.2d 531 (1970); *Ingram* v. *State,* 45 Ala.App. 108, 226 So.2d 169 (1969). *But see Holloway* v. *Wolff,* 351 F.Supp. 1033 (D. Neb. 1972); *Commonwealth* v. *Raymond,* 412 Pa. 194. 194 A.2d 150 (1963).

*Richard J. Israel,* Attorney General, *Donald P. Ryan,* Asst. Attorney General, *R. Raymond Greco,* Special Asst. Attorney General, for plaintiff.

*Aram K. Berberian, Robert B. Tanenbaum,* for defendant.