**IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE**

**AT JACKSON**

**SEPTEMBER SESSION, 1996**



**FILED**

**March 12, 1998**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | ) | **C.C.A. NO. 02C01-9312-CC-00276** |
| | ) | |
| Appellee, | ) | |
| | ) | |
| | ) | **MADISON COUNTY** |
| **VS.** | ) | |
| | ) | **HON. FRANKLIN MURCHISON** |
| **DARRELL LEE EMERSON,** | ) | **JUDGE** |
| | ) | |
| Appellant. | ) | **(Direct Appeal)** |


FOR THE APPELLANT:

MIKE MOSIER
204 West Baltimore
P. O. Box 1623
Jackson, TN 38302-1623

FOR THE APPELLEE:

JOHN KNOX WALKUP
Attorney General and Reporter

WILLIAM DAVID BRIDGERS
Assistant Attorney General
450 James Robertson Parkway
Nashville, TN 37243

JERRY WOODALL
District Attorney General

NICK NICOLA
Assistant District Attorney
P. O. Box 2825
Jackson, Tn 38302


OPINION FILED _____

REVERSED AND REMANDED


JERRY L. SMITH, JUDGE

# OPINION

On May 19, 1995, a Madison County Circuit Court jury found Appellant Darrell Lee Emerson guilty of attempted second-degree murder, aggravated assault, two counts of reckless endangerment, possession of marijuana with intent to sell, possession of marijuana with intent to deliver, possession of drug paraphernalia, and possession of a deadly weapon with intent to employ it during the commission of a felony. The trial judge merged the possession with intent to deliver conviction with the conviction for possession with intent to sell. As a Range I standard offender, Appellant was sentenced to twelve years for attempted second-degree murder, six years for aggravated assault, two years for each count of reckless endangerment, two years for possession of marijuana with intent to sell, eleven months and twenty-nine days for possession of drug paraphernalia, and two years for possession of a deadly weapon with intent to employ it during the commission of a felony. All sentences were ordered to run concurrently. On appeal, Appellant raises the following issues:

1) Whether the evidence is sufficient, as a matter of law to support his convictions for attempted second-degree murder, aggravated assault, and two counts of reckless endangerment,
2) Whether the trial court abused its discretion in permitting police officers to testify that they always complied with the "knock and announce" rule and permitting the police officers to demonstrate how they allegedly complied with that rule,
3) Whether the trial court properly overruled Appellant's motion to suppress,
4) Whether the trial court committed prejudicial error in denying Appellant's request for special jury instructions on self-defense, the "knock and announce" rule, and character evidence, and
5) Whether the trial court properly sentenced Appellant.

After a careful review of the record, we reverse all of Appellant's convictions, dismiss the conviction for aggravated assault, attempted second degree murder

and merge the two counts of reckless endangerment into one, and remand for re-trial on the remaining counts of the indictment.

## I. Factual Background

Suspecting Appellant of possessing and dealing marijuana, police officers obtained a search warrant for Appellant's home located in Jackson, Tennessee. After obtaining the warrant, officers from the Madison County Sheriff's Department, the Jackson Police Department, and the 26th Judicial District Drug Task Force went to Appellant's house on December 1, 1993 to execute the warrant. The officers divided into a front door and a rear door team. Mark Caldwell, Danny Mullikin, Alphonzo Newburn, Donald Holland, and James Truelove were members of the front door team. Thomas Coleman, Matthew Hardaway, and Glenn Penney were members of the back door team. According to the plan of entry, the front door team would announce their presence and attempt to gain entry. Once the teams were in place, the front door team tried to pry open Appellant's screen door but were unsuccessful. They then ripped it off and began knocking on the wooden door at the front of the house. While knocking, they yelled, "Police. Search Warrant." At this point, Officer Caldwell heard noises inside the house that sounded as if someone was running from the front of the house to the rear of the house. Afraid that Appellant was attempting to flush his marijuana down the toilet, Caldwell and Newburn began kicking the front door down. As they did so, officers continued to yell "Police. Search Warrant." After several kicks, the front door gave way and the front door team entered the house. As Caldwell entered the house, Appellant shot him, striking him in the neck. Mullikin and several other officers then struggled with Appellant to restrain him. Shortly after the front door team began kicking on Appellant's

door, the rear door team began knocking on Appellant's rear door while yelling, "Police. Search Warrant." The rear door team then began battering Appellant's rear door with a battering ram. When they entered the house, they heard a popping sound and smelled gunpowder.

At trial, the defense argued that on the night of December 1, 1993, Appellant was at home watching television when he heard someone fiddling with his screen door. Fearful for his life, he went to his bedroom to retrieve a gun. Appellant claimed that he never heard anyone yell "Police. Search Warrant." According to Appellant, as soon as he realized that he had shot a police officer he threw down his weapon and surrendered. Appellant testified on his own behalf claiming that he was acting in self-defense. Appellant's neighbors testified that they never heard anyone shout "Police. Search Warrant." Several people testified on behalf of Appellant that he was a truthful person.

At the suppression hearing, the proof submitted by the State showed that Newburn used a screwdriver to pry open the screen door but was unable to do so. He then ripped the door open. Caldwell proceeded to knock on the wooden door, yelling "Police. Search Warrant." After knocking and announcing his presence, Caldwell heard someone inside the house running toward the rear of the house. In response, Caldwell and Newburn began kicking the door in. Officer Coleman, part of the back door team heard the front door team yelling "police search warrant," and began preparing to breach the rear door. Once he heard the front door being breached he yelled "police. Search Warrant," and then breached the rear door. The trial court found that the police had lawfully entered Appellant's home, and therefore admitted the evidence found in the search.

-4-

## II. Sufficiency of the Evidence

Appellant maintains that the evidence was insufficient as a matter of law to support his convictions for attempted second-degree murder and aggravated assault of Officer Caldwell and reckless endangerment of Officer Newburn and Officer Mullikin. Appellant does not contend that the State did not put forth enough evidence to establish the elements of these crimes. Instead, he argues that the officers' stories varied so much among each other and between the night of the search and the time of trial, they were not believable. When an appeal challenges the sufficiency of the evidence, the standard of review is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 318 (1979); State v. Evans, 838 S.W.2d 185, 190-91 (Tenn. 1992), cert. denied, 114 S. Ct. 740 (1994); Tenn. R. App. P. 13(e). On appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable or legitimate inferences which may be drawn therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). This Court will not reweigh the evidence, re-evaluate the evidence, or substitute its evidentiary inferences for those reached by the jury. State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973).

Once approved by the trial court, a jury verdict accredits the witnesses presented by the State and resolves all conflicts in favor of the State. State v. Hatchett, 560 S.W.2d 627 (Tenn. 1978); State v. Townsend, 525 S.W.2d 842 (Tenn. 1975). The credibility of witnesses, the weight to be given their testimony, and the reconciliation of conflicts in the proof are matters entrusted exclusively to the jury as trier of fact. State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984). For these reasons, had the jury been properly instructed, [see discussion infra.]

we find that there was sufficient evidence to find Appellant guilty of attempted second-degree murder, aggravated assault, and reckless endangerment.

However, Appellant also claims that he could not legally be convicted of both attempted second-degree murder and aggravated assault of Officer Caldwell because the crimes involved the same person.  In State v. Denton, 938 S.W.2d 373 (Tenn. 1996); our Supreme Court extended double jeopardy protection under the Tennessee Constitution beyond that provided by the federal constitution.[1] That is, while multiple convictions for a single criminal action may be permitted by the federal constitution under Blockberger v. United States, 284 U.S. 299 (1932), the result may be different under the Tennessee Constitution. In order to determine whether multiple convictions for a single criminal episode which violates two distinct statutes is permissible under Tennessee law, we must now engage in the following four prong inquiry: "(1) a Blockberger analysis of the statutory offenses; (2) an analysis, guided by the principles of Duchac [v. State, 505 S.W.2d 237 (Tenn. 1973)], of the evidence used to prove the offenses; (3) a consideration of whether there were multiple victims or discrete acts; and (4) a comparison of the purposes of the respective statutes."  Denton, 938 S.W.2d at 381.

This Court in State v. Hall, Madison County, C.C.A. No. 02C01-9607-CC-00211, Opinion filed January 28, 1997, at Jackson; has previously held that because each statutory provision setting forth these offenses requires proof of an additional fact which the other does not, attempted second-degree murder and aggravated assault are not the same offense for federal double jeopardy purposes.  We also held in Hall that the purposes of the statutes prohibiting

---

[1] The double jeopardy clause of the Tennessee Constitution provides "[t]hat no person shall, for the same offense, be twice put in jeopardy of life or limb."  Tenn. Const., Art I, Sec. 10.

attempted murder and aggravated assault are the same: to prevent physical attacks upon persons. Id. As in Hall, we find that the evidence used to prove both the offenses in this case is the same: the defendant's firing a loaded gun at a person entering his home. The convictions were for a discrete act against Officer Caldwell. Therefore, as in Hall and under the reasoning in Denton, we find that Appellant's convictions for attempted second-degree murder and aggravated assault must merge. Accordingly, we reverse Appellant's conviction for aggravated assault.

In addition, Appellant challenges his conviction for two counts of reckless endangerment because there was only a single course of conduct. In fact, this Court held in State v. Ramsey, 903 S.W.2d 709 (Tenn. Crim. App. 1995), that a single course of conduct could only give rise to one conviction for reckless endangerment despite the fact that more than one person may have been endangered. Therefore, the trial court erred in failing to merge two counts into one.

### III.  Demonstration of Compliance with "Knock and Announce" Rule

Appellant also contends that the trial court erred in permitting the officers to testify that they always complied with the "knock and announce" rule and in permitting them to demonstrate how they yelled "Police. Search warrant" in the courtroom. The trial court permitted the officers to testify that they always complied with the "knock and announce" rule pursuant to Tennessee Rule of Evidence 406(a) which provides that "[e]vidence of the habit of a person . . . whether corroborated or not and regardless of the presence of eye-witnesses, is relevant to prove that the conduct of the person . . . on a particular occasion was in conformity with the habit." Appellant objects to this testimony on the grounds

of relevancy and prejudice. The evidence was clearly relevant considering that one of the main issues in the trial was whether the police officers knocked and announced their presence in the execution of their warrant. Appellant argues that the testimony prejudiced him because it led the jury to believe that since officers had knocked and announced other times, it is more likely than not that they knocked and announced at Appellant's home. Of course, evidence of habit is admissible for this very reason. See Tenn. R. Evid. 406(a). Appellant does not state why the probative value of this evidence is outweighed by the danger of unfair prejudice. Because the trial court complied with the dictates of Tennessee Rule of Evidence 406 and Appellant has failed to demonstrate how the evidence was unduly prejudicial, the trial court did not err in permitting the officers to testify about their habit of knocking and announcing before the execution of a search warrant.

The decision whether to allow a courtroom demonstration rests within the discretion of the trial judge and will not be disturbed absent a showing of abuse of that discretion. State v. Underwood, 669 S.W.2d 700, 704 (Tenn. Crim. App. 1984). How loudly the officers announced their presence was clearly relevant because the issue of whether Appellant heard the police knock and announce their presence was central to the trial. If the police used a tone of voice used in everyday, regular conversation there would be a good chance that Appellant did not hear them at his door. Again, Appellant has failed to show how the demonstration was unduly prejudicial. Therefore, it was proper to allow the officers to testify as to how loudly they announced their presence.

## IV. Denial of Appellant's Motion to Suppress

Appellant argues that the trial court erroneously ruled that evidence gathered as a result of the December 1, 1993 search of his home was admissible. We must agree with Appellant for two reasons. First of all, we find that the warrant was improperly executed. Secondly, we find that the search warrant was not supported by probable cause. At the outset, we recognize that a trial court's determination at a suppression hearing is presumptively correct on appeal and may be overcome only if the evidence in the record preponderates against the trial court's findings. State v. Stephenson, 878 S.W.2d 530, 544 (Tenn. 1994).

Before an officer may make a forced entry into an occupied residence, the officer must give "notice of his authority and purpose." Tenn. R. Crim. P. 41(e), State v. Fletcher, 789 S.W.2d 565, 566 (Tenn. Crim. App. 1990). The knock and announce rule is not merely a statutory or court rule, it is part of the requirement under the Fourth Amendment to the United States Constitution that searches be reasonable. Richards v. Wisconsin, ___ U.S. ___, 117 S.Ct. 1416, 1420 (1997); Wilson v. Arkansas, 514 U.S. 927, 115 S.Ct. 1914, 131 L.Ed.2d 976 (1995). The requirement mandates that officers (a) identify themselves as law enforcement officials and (b) explain the purpose of their presence, i.e. the execution of a search warrant. W. LaFave, Search and Seizure, § 4.8(c) at 606-07 (3d ed. 1996). If the officer is not admitted to the residence after giving proper notice, the officer is authorized to "break open any door or window . . . , or any part thereof, . . . to the extent that it is reasonably necessary to execute the warrant and does not unnecessarily damage the property." Tenn. R. Crim. P. 41(e).

The purpose of the "knock and announce" rule is threefold:

> First, it provides protection from violence, assuring the safety and security of both the occupants and the entering officers. Second, it protects 'the precious interest of privacy summed up in the ancient adage that a man's house is his castle. . . . Finally, it protects against the needless destruction of private property.

Lee, 836 S.W.2d at 128 (citing U.S. v Moreno, 701 F.2d 815, 817 (9th Cir. 1983)).

Absent exigent circumstances, officers must wait a reasonable period of time before they may break and enter into the premises. State v. Lee, 836 S.W.2d 126, 128 (Tenn. Crim. App. 1991) (citing State v. Carufel, 314 A.2d 144, 146 (R.I. 1974)). In State v. Fletcher, supra., this Court indicated that "sounds indicative of flight or destruction of evidence -- running, scuffling, or toilet flushing" could excuse compliance with the knock and announce rule. 789 S.W. 2d at 566. However, the United States Supreme Court has recently refined the test of exigency which will excuse compliance with the knock and announce rule. In order to excuse non-compliance with the rule, the police must have a "reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be dangerous or futile, or that it would inhibit the effective investigation of the crime by, for example, allowing the destruction of evidence." Richards v. Wisconsin, 117 S.Ct. At 1421.

Turning now to the facts of this case the State argues that officers fully complied with the knock and announce rule, and that even if they did not they were excused from doing so because they heard someone run inside the house. The evidence put forth at the suppression hearing and undisputed by the State reveals that the officers quietly attempted to pry open Appellant's screen door.[2]

_____

[2]The State argues that officers tried to open the screen in order to aid the occupants of the residence in hearing the officers knock and identify themselves. One wonders why if the officers were only interested in making their presence known, they felt it necessary to open the screen "quietly".

When this was unsuccessful, they ripped it open. Only then did they knock and announce. Clearly, ripping off Appellant's screen door was a breaking within the meaning of Tennessee Rule of Criminal Procedure 41(e). While the State attempts to justify the officers' actions by claiming that they heard running to the back of the house, they did not hear the running until after they had, without announcement, broken open Appellant's door. While it is doubtful that sounds of running inside an occupied dwelling can, standing alone, form the basis of a "reasonable suspicion" of attempted escape or destruction or evidence, it is clear that officers may not through such measures as ripping a screen door off its hinge create an exigency they later claim justifies an unannounced entry. See, State v. Lee, 836 S.W. at 129.

Since the officers did not knock and announce before tearing open the screen door, they did not comply with the "knock and announce" rule. Under the circumstances nothing excuses failure to comply with the rule. We conclude that the trial court erred in denying Appellant's motion to suppress the evidence seized pursuant to the search warrant, and therefore order a new trial on the conviction for possession of marijuana with intent to sell and possession of drug paraphernalia.

Moreover, we find that the motion to suppress should have been granted because the warrant was defective. In State v. Jacumin, 778 S.W.2d 430 (1989), the Tennessee Supreme Court adopted the two-pronged Aguilar-Spinelli test as the standard by which probable cause is to be measured to determine if a search warrant is proper under Article 1, Section 7 of the Tennessee Constitution. Id. at 436 (citing Aguilar v. Texas, 84 S.Ct. 1509 (1964) & Spinelli v. United States, 89 S.Ct. 584 (1969)). Under that test, when a search warrant is based upon informant information, the basis of the informant's knowledge and his credibility

must be established before a magistrate may properly issue a warrant. Jacumin, 778 S.W.2d at 432.

The affidavit at issue stated that the police had received information from "a confidential informant who has been proven reliable in the past through police observation and supervision . . . ." "Said confidential informant has worked with investigators in an undercover capacity wherein contact has been made with alleged drug traffickers for the purpose of probable cause drug purchases." A conclusory statement that the informant is reliable is insufficient. State v. Moon, 841 S.W.2d 336, 338 (Tenn. Crim. App. 1992). Likewise, the assertion that the informant has worked with police officers in the past does not cure the insufficiency. See State v. Udzinski, No. 01C01-9212-CC-00380, 1993 WL 473308, at *3 (Tenn. Crim. App. Nov. 18, 1993). The State argues that this Court has found that similar information has sufficiently supported search warrants in the past. The State cites two cases wherein the credibility prong was satisfied by a statement in the affidavit that information from an informant had led to either arrests or convictions. While informant reliability has been established by showing that an informant's past performance has led to convictions or arrests, here we have neither. See id. From the statements regarding the informant's past work with the police one cannot even discern if drug purchases were ultimately made. All one can determine is that contact was made with alleged drug traffickers. We find that the information contained in the affidavit is insufficient to establish the credibility of the informant.

Both the failure to properly comply with the "knock and announce rule" and the insufficiency of the search warrant mandate that the evidence seized be suppressed and a new trial ordered.

-12-

## V. Failure to Instruct the Jury

Appellant's fourth issue deals with the trial court's failure to instruct the jury on (1) the presumption found in Tennessee Code Annotated Section 39-11-611(b) (1991), which applies when a person uses deadly force against an intruder in his own home, (2) the "knock and announce" rule, and (3) character evidence. The presumption found in Tennessee Code Annotated Section 39-11-611(b) provides that a person using deadly force against an intruder in his home is presumed to have held a reasonable fear of imminent peril or death or serious bodily injury. The instruction on character evidence provides both that "a person of good character may violate the law, but a person of good character is less likely to violate the law than one of bad character," and that the defendant's character "may be considered for the purpose of enhancing (the defendant's) credibility as a witness." A criminal defendant has the right to a correct and complete charge of the law given to the jury by the trial judge. Stephenson, 878 S.W.2d at 555 (citing State v. Teel, 793 S.W.2d 236, 249 (Tenn. 1990) & State v. Bryant, 654 S.W.2d 389, 390 (Tenn. 1983)). The State concedes that these instructions should have been given but that the trial judge's failure to give them was harmless. We disagree.

Although the trial judge gave a general self-defense charge which provided that a person is justified in using deadly force if he reasonably believes that he was in imminent danger of death or serious bodily injury, Appellant was entitled to an instruction concerning the presumption found in Tennessee Code Annotated Section 39-11-611(b). It was for the jury properly instructed, to decide if the entry by the police was lawful for the purposes of self-defense. If it was unlawful and Appellant used deadly force in his home in a reasonable belief he was in imminent danger of death or serious bodily injury by an intruder, he was entitled to the benefit of the presumption.

Appellant was also entitled to an instruction on the "knock and announce" rule. Of course, this is not so that the jury could decide if evidence obtained from the search was admissible. Instead, the testimony concerning whether the police complied with the rule was necessary for the jury to determine if Appellant's theory of self-defense could be supported. Finally, the jury heard evidence of Appellant's good character but was not told how to use that evidence. Because the jury was not given complete and correct instructions, Appellant's convictions for attempted second-degree murder and reckless endangerment must be reversed and retried. Because we order a new trial on these counts, we pretermit determination of the sentencing issues raised by Appellant.

We conclude that merger of the attempted second-degree murder conviction and the aggravated assault conviction as well as merger of the two counts of reckless endangerment is required. Furthermore, the convictions for possession with intent to sell and possession of drug paraphernalia must be reversed due to the improper execution of the search warrant and the lack of probable cause to issue the search warrant. We order a new trial on these charges. Because complete proper instructions were not given to the jury, we remand for a new trial on the indictments for attempted second-degree murder and reckless endangerment.

_____
JERRY L. SMITH, JUDGE


CONCUR:


_____
JOE B. JONES, PRESIDING JUDGE

_____
DAVID H. WELLES, JUDGE