STATE

v.

**Luis RIVERA et al.**

No. 96–116–C.A.

Supreme Court of Rhode Island.

Dec. 23, 1997.

Jane McSoley, Aaron Weisman, Assistant Attorneys General, for plaintiff.

Michael H. Devlin (Barbosa), Scott A. Lutes, Providence, Michael J. Zarella (Cres-

po), Paula Rosin, Paula Lynch Hardiman, Asst. Public Defenders, for defendant.

Before WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

FLANDERS, Justice.

This case concerns a 1993 drug raid during which Providence police officers executed search warrants for the second- and third-floor apartments in a Providence tenement. The searches yielded enough evidence of heroin and other drug-processing paraphernalia from the third-floor apartment to convict the defendants, Luis Rivera (Rivera), Noel Crespo (Crespo), and Manuel Barboza (Barboza), of a slew of drug-possession offenses.[1]

On appeal, Crespo and Barboza (defendants) claim that their trials should have been severed, that their motions for acquittal and a new trial should have been granted, and that the trial justice should not have limited their counsels' attempts to cross-examine a prosecution witness for the purpose of suggesting that the heroin found in the third-story apartment may have belonged to a previous tenant. Crespo also claims that the drug-possession evidence against him should have been suppressed because the police violated the so-called knock-and-announce rule when they battered their way into his second-story apartment, that the trial justice erred in refusing to give certain requested jury instructions on drug possession and conspiracy, and that the trial justice should have granted Crespo's motion for a mistrial because he had erred in commenting to the jury on the legality of the apartment searches. Finally, Barboza claims the trial justice erred (1) in failing to suppress the evidence that he had a pager with him when he was arrested and (2) in limiting his counsel's attempted cross-examination of a prosecution witness regarding his personal use of

a pager. After considering each of these arguments, we conclude that there is no merit to defendants' appeals, and we therefore affirm their convictions.

## Facts

On October 8, 1993, six members of the Providence Police Special Investigation Bureau obtained and executed a search warrant for a second-floor apartment located in a three-story tenement (tenement) at 300–302 Douglas Avenue. The tenement contained separate apartments on each of its three floors. At approximately 7:30 p.m., four policemen entered the unlocked front door of the tenement while the remaining two officers secured the rear entrance. All the officers wore raid gear, including jackets and hats emblazoned with the word "POLICE" and the Providence police emblem.

The tenement's front door opened into a hallway area containing a staircase that led up to the second- and third-floor apartments. Upon gaining entry into the hallway, the officers immediately observed a man, later identified as Rivera, descending the staircase. One officer, Detective Francisco Colon, shouted in Spanish, "Police, put your hands up!" When he saw the police, Rivera wheeled around on the staircase to face back up the stairs toward the second floor apartment and began to holler, "Police!" in Spanish while thrusting his right hand in his front pocket. Bounding up the stairs, Detective Colon grabbed Rivera, removed his hand from his pocket, and pushed him against the wall of the staircase. He then left Rivera for the remaining two officers to apprehend while he accompanied Detective Joseph Lennon up the staircase toward the second-floor apartment.

Without knocking or announcing their presence, Detectives Colon and Lennon deployed a battering ram to gain entrance to the apartment. Upon entering, the detectives first observed two women and several small children seated in the living room. In

---

1. The charges against Rivera, Crespo, and Barboza were consolidated for trial in the Superior Court. After hearing the evidence, a jury convicted all defendants of (1) possession of between one ounce to one kilogram of heroin, (2) possession of heroin with intent to deliver, and (3) conspiracy to possess heroin with intent to deliver. After his conviction and during the pendency of his appeal, Rivera was stabbed to death in prison by a fellow inmate. Accordingly, pursuant to a motion filed by his counsel, we vacated his conviction.

addition they heard a commotion in the rear stairwell area abutting the kitchen. The detectives ran through the apartment to find out what was happening. There they observed four individuals beating a hasty retreat down the rear stairwell from the third floor. They immediately apprehended three of them,[2] including Crespo, on the second-floor landing while the officers posted at the tenement's rear entry snagged Barboza on the first-floor landing.

The officers detained defendants and the other individuals they had seized in the second-floor apartment while Detectives Colon and Lennon proceeded to investigate the rear stairwell area where they had first observed defendants fleeing from the scene. When they reached the top of the stairs, they found themselves at the back entrance to the upstairs apartment, the rear door to which was wide open. The detectives then entered this upstairs apartment and made sure that no one else was present. In doing so, they made two noteworthy observations. First, on the kitchen table they saw several glassine packets, a candle, a scale, plastic bags, and a dish that contained white powder. Second, the kitchen table and chairs as well as the cutlery in the upstairs apartment matched some of the furniture and utensils they had seen in the second-floor apartment. Detective Colon then returned to his office and attempted to obtain a search warrant for the upstairs apartment.

Meanwhile, the officers searched the second-story apartment as well as each defendant. Although they found no drugs, the officers discovered that both defendants were carrying pagers on their persons. Moreover, the officers discovered two photographs in the master bedroom of Rivera's second-floor apartment showing Rivera, Crespo, and Barboza all posing together.[3] Upon obtaining and executing a valid search warrant for the upstairs apartment, the officers then conducted a full search of these premises, in the course of which they seized the powder and the drug paraphernalia from the kitchen ta-

ble. The officers also seized numerous glassine packets that were strewn about the rear stairwell. These were similar to those found on the kitchen table of the upstairs apartment. The police then caused the powder taken from the kitchen table to be tested, whereupon it was determined to contain over an ounce of heroin.

### Analysis

The defendants raise three similar issues that we consider jointly; any material variations in either defendant's particular arguments are noted. In addition Crespo raises three issues unique to his appeals, and Barboza raises one further point that is peculiar to his situation. We take up these issues seriatim.

### I

### Denial of the Severance Motions

■ First, defendants contend that the trial justice erred in denying their individual motions to sever their trials. Specifically they assert that their defenses compelled the jury to infer their guilt because each was trying to distance himself from the others at the trial. In addition Barboza claims that the state introduced evidence uniquely applicable to Crespo (for example, his use of an alias, his alleged residence in the second-story apartment, and the matching kitchen furniture and utensils), which allowed the jury to infer Barboza's guilt unfairly merely because he was tried with Crespo. In response the state argues that neither defendant suffered substantial prejudice as a result of the joinder because a core of common factual evidence existed that was admissible against all defendants. It further contends that any spillover evidence uniquely applicable to just one defendant was merely incremental when compared to the quantum of evidence applicable to all defendants. Finally, it posits that any spillover evidence was

---

2. In addition to Crespo, the police also apprehended two individuals who entered pleas of nolo contendere in the Superior Court.

3. In the master bedroom the officer also discovered a photograph depicting Rivera and one of the other individuals who had been apprehended while they were all attempting to flee down the rear stairwell.

easily distinguishable by the jury as being applicable only to one defendant or the other.

■ This court will reverse a trial justice's decision to deny a severance motion only if it can be shown that the denial resulted in substantial prejudice to the defendant's right to a fair trial. *See State v. Whitman,* 431 A.2d 1229, 1233 (R.I.1981); *State v. Patriarca,* 112 R.I. 14, 28, 308 A.2d 300, 310 (1973). Moreover, to constitute reversible error, the trial justice's denial must amount to a clear abuse of discretion. *See State v. Vanasse,* 593 A.2d 58, 66 (R.I.1991). If a reasonable jury is able to distinguish which evidence applies to which defendant, the fact that the proof may be proportionately greater against one defendant is not in and of itself grounds for granting a trial severance. *Id.* at 67. Here the similar evidence introduced against both defendants was relatively straightforward and implicated both of them equally. The officers apprehended both defendants in the rear stairwell while they were attempting to flee from an apartment containing heroin and other drug paraphernalia. Moreover, in the second-story apartment the officers discovered a photograph of defendants posing with the other individuals who were apprehended in the rear stairwell. Any additional or spillover evidence applicable to just one defendant (for example, the fact that Crespo, and not Barboza, may have lived in the second-story apartment) was readily allocable by the jury to one defendant or the other and did not result in substantial prejudice to either one of them merely because they were tried together. Accordingly the trial justice did not err in denying the severance motions.

## II

### Limiting the Cross–Examination of Rivard

■ The defendants next contend that the trial justice erred in limiting the cross-examination of one of the state's witnesses, Mark Rivard (Rivard). They argue that their proposed cross-examination would have revealed that Rivard had seen a previous tenant in the tenement's basement with a tourniquet on his arm. They contend that this evidence of third-party drug activity would have presented the jury with an alternative explanation for the presence of the glassine packets found in the upstairs apartment and in the rear stairwell, thereby giving the jury a factual basis to return a not-guilty verdict. The state responds that defendants failed to make any offer of proof that would have linked this previous tenant to the glassine packets found in the upstairs apartment and the rear stairwell. Therefore, the trial justice's restriction of Rivard's cross-examination was within his discretion.

■ This court will reverse a trial justice's ruling limiting the scope of cross-examination only upon a showing of prejudicial error. *See State v. Roderigues,* 656 A.2d 192, 195 (R.I.1995). Unless the defendant can show a proximate connection between the third party and the commission of the alleged crime, the trial judge may exclude such evidence without committing prejudicial error. *State v. Brennan,* 526 A.2d 483, 488 (R.I.1987). Here the trial justice could have justifiably concluded that Rivard's testimony about a previous tenant's basement activities would not have linked this individual to the glassine packets found in the upstairs apartment and the rear stairwell. Given the absence of any proffered nexus between previous tenant's observed presence in the basement and the glassine-packets evidence found two and three floors above, we conclude that this ruling did not constitute prejudicial error. *Accord id.* at 488 (affirming trial justice's limiting of cross-examination where no evidence had been proffered linking a third party to the alleged crime).

## III

### Denial of Defendants' Motions for Acquittal and For A New Trial

■ The defendants also claim the trial justice erred in denying their motions for judgment of acquittal and for a new trial. They argue that no evidence sufficient to convict them existed beyond their mere presence at the scene where criminal conduct may have occurred. Because mere presence, they argue, is insufficient to support their

heroin-possession convictions, the trial justice should have granted their motions. The state contends that because the trial justice considered the totality of the circumstances and did not overlook or misconceive material evidence, his denial of their new-trial motions was proper and he did not abuse his discretion in denying their motions for judgment of acquittal.

■ In deciding a motion for entry of judgment of acquittal, the trial justice should review all the evidence in a light most favorable to the state and draw all reasonable inferences consistent with the defendant's guilt, without assessing the credibility of witnesses or assigning any weight to the evidence. The motion should be granted only if the trial justice is unable to conclude that the prosecution's case warrants a guilty verdict beyond a reasonable doubt. *See State v. Gazerro,* 420 A.2d 816, 827 (R.I.1980). On appeal we shall not disturb the trial justice's denial of a motion for a new trial unless the trial judge overlooked or misconceived material evidence or was otherwise clearly wrong. *See State v. Stewart,* 663 A.2d 912, 925 (R.I. 1995).

Here the trial justice noted Rivera's apparent efforts to thwart the officers in their attempt to progress up the stairs, including his shouted warning to those inside the apartment and his struggle on the stairs with the police. He also took into account defendants' flight down the rear stairwell, the "assembly line packaging operation" for heroin in the upstairs apartment, and the matching kitchen furniture and utensils in both apartments. With respect to the judgment of acquittal, we have similarly reviewed this evidence, without assessing the credibility of witnesses or assigning any weight thereto. We conclude that it was reasonable for the trial justice to infer that when defendants were arrested, they were in the process of fleeing from the upstairs apartment where they knew that the officers would discover the inculpatory drug evidence. We cannot say that this evidence was incapable of warranting a reasonable jury in returning a guilty verdict beyond a reasonable doubt. Accordingly we conclude that the trial justice

properly denied defendants' motions for judgment of acquittal.

Unlike the situation in *In re Caldarone,* 115 R.I. 316, 345 A.2d 871 (1975) (holding that the defendants' mere presence in and flight from a wooded area where police discovered heroin and drug paraphernalia were insufficient to justify the trial court's denial of a motion for judgment of acquittal), the evidence here goes beyond mere presence at and flight from a location where contraband has been found. Here the group photographs of defendants, defendants' observed presence together in the rear stairwell where glassine packets were also found, Rivera's cautionary warning to his cohorts, the appearance in the upstairs apartment of an "assembly line packaging [of heroin] operation," and the matching kitchen sets and utensils, all present facts from which a jury could reasonably convict these defendants for both having knowledge of the heroin's presence at the scene and intending to exercise control over it.

■ With respect to defendants' motions for a new trial, they have not shown that the trial justice overlooked or misconceived material evidence of their drug possession or that he was otherwise clearly wrong in his assessment of the proof. It was within his discretion to afford the circumstantial evidence of defendants' guilt as much weight as direct evidence. *See State v. Francis,* 78 R.I. 73, 78, 79 A.2d 177, 179 (1951). Moreover, a reasonable jury also could have concluded from the circumstantial evidence introduced that defendants were guilty of the offenses charged, despite the dearth of direct evidence. And the trial justice's failure to overturn the jury's verdict was not tantamount to overlooking or misconceiving material evidence, nor did it constitute an abuse of discretion. Thus we hold that the trial justice's denial of the new trial motions was proper.

## IV

### Alleged Violation of the Knock–and–Announce Rule

■ The next issue raised by Crespo is twofold. First, did Crespo preserve for ap-

pellate review his claim that the officers' search of the second-floor apartment violated the knock-and-announce rule of the Fourth Amendment? Second, if the issue was preserved, did the officers violate the knock-and-announce rule by failing to do so before entering the second-floor apartment? Crespo argues that the knock-and-announce doctrine is a novel rule that his counsel could not have been aware of at the time of this pre-*Wilson* trial. *See Wilson v. Arkansas*, 514 U.S. 927, 115 S.Ct. 1914, 131 L.Ed.2d 976 (1995) (holding that an inquiry into whether police announced their presence at the premises they intend to search is an element of the Fourth Amendment's inquiry regarding the reasonableness of the search). Therefore, he claims the usual raise-or-waive rule is inapplicable,[4] as his counsel could not have been aware of this novel rule before the *Wilson* case was decided by the United States Supreme Court. The state counterargues that the knock-and-announce principle was hardly novel at the time of this pre-*Wilson* trial, as it had been part of this state's law for approximately thirty years. *See State v. Johnson*, 102 R.I. 344, 230 A.2d 831 (1967).

With respect to the police officers' alleged noncompliance with the rule, Crespo argues that they entered the apartment without warning, thereby violating the Fourth Amendment. The state argues alternatively that the knock-and-announce rule is not inflexible. Thus the state contends that the police may enter unannounced when, as here, their knocking and announcing could result in (1) destruction of evidence, (2) heightened danger to the officers, and/or (3) an escape of the subjects from the premises.

We agree that the knock-and-announce rule was not a novel doctrine when this case was tried. In 1967 this court stated that "in the absence of some special exigency, before an officer can break into and enter one's home he * * * 'ought to signify the cause of his coming, and to make request to open doors * * *.'" *See Johnson*, 102 R.I. at 351, 230 A.2d at 835 (citing *Read v. Case*, 4 Conn.

166, 171 (1822)); *see also State v. Mastracchio*, 672 A.2d 438, 442–43 (R.I.1996) (holding that the knock-and-announce rule has long been a part of Rhode Island law). Thus this rule has been a well-settled tenet of Rhode Island law for thirty years. And it has been similarly established that if trial counsel intends to preserve such an argument for appeal, then he or she must first make a timely objection at the trial. *See State v. Bryant*, 670 A.2d 776, 783 (R.I.1996); *State v. Medeiros*, 599 A.2d 723, 727 (R.I.1991); *State v. Tillinghast*, 465 A.2d 191, 198 (R.I.1983). Here Crespo failed to do so.

Moreover, even if Crespo had properly raised this issue at trial and preserved it for our review, in the circumstances of this case the officers did not have to knock and announce their presence before executing the search warrant. Compliance with the knock-and-announce rule is not an inflexible condition precedent to the valid execution of a search warrant. *See, e.g., Richards v. Wisconsin*, 520 U.S. ——, 117 S.Ct. 1416, 137 L.Ed.2d 615 (1997) (holding that when the defendant, upon opening his hotel room to answer a maintenance call and discovering a uniformed police officer, slammed the door shut, the officer lawfully broke down the door and entered unannounced because the defendant could have destroyed evidence). Here, upon hearing Rivera scream "Police!", followed by the commotion caused by Rivera's stairwell struggle with the officers, any people present in the apartment would have been alerted to destroy evidence. Therefore, the officers' failure to knock and announce their presence before entering did not render their subsequent execution of the search warrant unreasonable.

## V

### Refusal to Give Certain Jury Instructions

Crespo next contends that the trial justice erred in denying certain of his requested jury instructions. He argues that because there was no direct evidence of his possessing drugs, the trial justice erred in

---

**4.** *See, e.g., State v. Bryant*, 670 A.2d 776, 783 (R.I.1996) (holding that, in order properly to preserve an alleged error for appellate review, the trial counsel must make a timely objection to the error in the trial court).

refusing to instruct the jury regarding the sufficiency of the evidence with regard to possession and with respect to proof of his intention to join a conspiracy. The state responds that the trial justice gave adequate instructions to the jury so that it was able to distinguish between constructive and actual possession.

■ Jury instructions need not be stated in the precise form requested. Rather a form equal in substance is sufficient. *See State v. Lane*, 609 A.2d 633, 636 (R.I.1992). After reviewing the instructions given by the trial justice,[5] we are of the opinion that the jury could have reasonably delineated between defendants' mere presence at the scene and their constructive possession of the contraband and the drug paraphernalia. Thus the jury instructions were proper.

## VI

### Denying the Mistrial Motion

■ Crespo also argues that the trial justice erred by commenting on the legality of the search and then failing to pass the case because of the alleged impropriety of these comments.[6] He claims that the trial justice's remarks regarding the legality of the search were so prejudicial that a cautionary instruction could not have rectified the damage done to his defense. Specifically he contends that the trial justice's comments intimidated the jury and lent credibility to the state's case. Thus, he claims, the trial justice's refusal to pass the case was reversible error. The state counters that the trial justice's remarks regarding the legality of the search did not serve to bolster the state's case or the state's witnesses and resulted in no prejudice to Crespo.

Here the trial justice commented on the legality of the search to prevent the jury from becoming sidetracked by an irrelevant issue. The legality of the search was for the court to decide and not for the jury. Accordingly the court's comments on the legality of the search do not warrant reversal. Moreover, we conclude that Crespo was not prejudiced thereby. Thus the trial justice correctly denied the mistrial motion.

## VII

### Admission of The Pager Evidence and Limiting Cross–Examination Thereon

■ The final issue, raised by Barboza, is whether the trial justice erred in failing to suppress the evidence of a pager that the police found on Barboza. Barboza also claims that the trial justice erred in limiting his counsel's attempted cross-examination of one of the state's witnesses regarding his personal use of a pager. He argues that the mere presence of a pager on his person is a neutral fact that was neither relevant nor probative of his drug possession and that, therefore, it should not have been admitted into evidence. The state argues that the trial justice properly determined that Barboza's possession of a pager was relevant to the evidence of his involvement with drug dealing at the scene and that, in any event, his ruling did not constitute an abuse of his discretion.

■ Relevant evidence is evidence that tends to make the existence of a material fact more or less probable. *See State v. Morel*, 676 A.2d 1347, 1355 (R.I.1996). Here, as was suggested during the trial of this case, a pager is a "tool of the trade." Thus the presence of a pager may be relevant in a trial charging a defendant with possessing illegal drugs with an intent to deliver. *See, e.g., People v. Vega*, 175 A.D.2d 932, 573 N.Y.S.2d

---

5. The trial justice instructed the jury that "[a] person who knowingly has direct physical control over a thing with knowledge of its nature is then in actual possession of it. A person who, although not in actual possession, knowingly had both the power and the intention to exercise dominion or control over a thing, directly or through another person or persons, is then in constructive possession of it if he has knowledge of its presence and nature."

After some deliberation the jurors requested re-instruction on the law of possession and the trial justice then reiterated this instruction.

6. The trial justice stated that "issues relating to efficacy, legality of search of the second or third floor apartments, or even the officers' entry into the building, are not issues that you need concern yourself with. The search was a legal search."

767 (N.Y.App.Div.1991) (finding that pagers constitute probative evidence). We conclude that where Barboza was in possession of a pager when he was arrested while attempting to flee from the police and from an apartment containing the classic indicia of a drug-processing operation, the trial justice acted well within his discretion when he admitted such evidence.

Moreover, the trial justice did not err in limiting Barboza's counsel in his attempted cross-examination of a police officer concerning the police officer's own personal use of a pager. This court will not disturb the trial justice's ruling on such a collateral matter unless the defendant can show that the trial justice abused his discretion in doing so and that the defendant suffered substantial prejudice to his defense as a result. *See State v. Lussier,* 686 A.2d 79, 80–81 (R.I.1996). Here, the trial justice permitted Barboza's counsel to question this witness regarding the fact that police officers often use pagers in their work and that no telephone numbers appeared on Barboza's pager when it was seized. However, when counsel attempted to question the witness further about how he uses his own personal pager, the trial justice sustained the state's objection on a relevancy basis. We conclude that such a ruling on a marginal factual point lies within the trial justice's discretion, *see, e.g., State v. Mattera,* 671 A.2d 1227, 1229 (R.I.1996), and did not constitute an abuse thereof, nor did it prejudice the defendant.

### Conclusion

For these reasons the defendants' appeals are denied and dismissed, and the judgments of conviction are affirmed.