**STATE**

v.

**Kenneth DAY.**

No. 2003–143–C.A.

Supreme Court of Rhode Island.

May 25, 2006.

Diane Daigle, for Plaintiff.

Catherine Gibran, Providence, for Defendant.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

**O P I N I O N**

Chief Justice WILLIAMS, for the Court.

The defendant, Kenneth Day (defendant), appeals from his conviction in the Superior Court of two counts of conspiracy to commit robbery, two counts of first-degree robbery, one count of assault with intent to commit robbery, one count of committing a crime of violence with a firearm, and one count of carrying a pistol without a license. The defendant contends the trial justice erred in consolidating for trial an indictment stemming from an incident involving Timothy Mignone (Mignone) on or about June 7, 2000 (charging one count of conspiracy to commit robbery and one count of first-degree robbery), with an indictment stemming from an incident involving Kerrie Morrison (Morrison) and Matthew Tarpy (Tarpy) on or about April 1, 2000 (charging one count of conspiracy to commit robbery, one count of first-degree robbery, one count of assault with intent to commit robbery, one count of committing a crime of violence with a firearm, and one count of carrying a pistol without a license). The defendant also argues that the trial justice committed error when he denied the defendant's request for the funding of a defense expert on eyewitness identification. For the reasons set forth in this opinion, we affirm the conviction.

**I**

**Facts and Travel**

The facts of this case arise from two crimes of violence in Providence: a robbery that took place in Waterplace Park on April 1, 2000, and a robbery committed in nearby Kennedy Plaza on June 7, 2000.

At dusk on April 1, 2000, Morrison and Tarpy, two high school students, left Providence Place Mall to walk around Waterplace Park while they waited for a call from friends. Morrison and Tarpy had spent the day participating in an extracurricular program at the State House. As they walked past a black man in a puffy coat, the man pulled out a semiautomatic weapon and pointed it toward Morrison's face. Then two more people, another black man and a white woman, approached Morrison and Tarpy. The second man struck Tarpy in the head and Morrison in

the back with a baseball bat. The man with the baseball bat rummaged through the pockets of Tarpy's pants and tried in vain to loosen Morrison's watch from her wrist. Morrison eventually had to throw her watch at the man to stop him from beating her with the bat. Also, one of the three assailants—Morrison later testified that she was unsure who—pried her purse from her shoulder. Then the three assailants left, absconding with Morrison's purse and watch. Although Tarpy was bleeding from the head, the two victims were able to walk to a nearby restaurant to call the police. Both Morrison and Tarpy would later testify at trial that during the robbery they had ample opportunity to observe the face of the man with the gun.

Neither Morrison nor Tarpy identified any of their assailants from photographs that the police provided in the days after the robbery. Tarpy, however, recognized defendant's picture in the Providence Journal two months later. The photograph had been published in conjunction with a newspaper article chronicling a double homicide. Tarpy notified the police, telling them defendant had been the gunman on the night he and Morrison were robbed. Although Tarpy never told Morrison of his identification, Morrison later picked defendant's picture out of a photo array and similarly identified him as the gunman on the night of the robbery.

Turning to the second crime of violence, at approximately 9:30 p.m. on June 7, 2000, nineteen-year-old Mignone arrived by bus at Kennedy Plaza in Providence. He had been playing basketball in Pawtucket earlier that evening. Carrying a backpack that held his basketball, a change of clothes, and his wallet, Mignone walked across Kennedy Plaza to catch a connecting bus that would take him home. While he waited, two young black men approached Mignone and asked what was in his backpack. Then another man, whom Mignone later identified as defendant, punched him in the back of the neck, and then proceeded to punch him repeatedly in the head and body. When Mignone tried to flee, the other two men pursued him and continued to beat him with their fists. Those two men eventually wrestled the backpack from Mignone. Mignone finally was able to draw the attention of the police patrolling the area, but their attempts to find the men who had attacked him were not successful.[1] Mignone, however, did give a statement to police.

Within seven days of the robbery, Mignone saw a picture of defendant in the Providence Journal, and notified the police that defendant was the man who initially hit him on the night of the robbery.[2] In March 2002, Mignone picked defendant's picture out of a photo array.

After the grand jury returned two separate indictments against defendant, the state moved to consolidate the indictments for trial pursuant to Rule 13 of the Superior Court Rules of Criminal Procedure. The trial justice granted the state's motion to consolidate, and he later denied defendant's motion to sever the indictments under Rule 14 of the Superior Court Rules of Criminal Procedure. The trial justice also denied defendant's motion for funds to retain an expert witness on eyewitness identification.

At trial, Morrison, Tarpy, and Mignone all testified to their recollections of the events discussed above. Additionally, a young woman, Kathryn Tribandis (Triban-

---

1. Mignone testified at trial that he could have identified the two men to the police officers, but did not do so because he feared reprisal.

2. The record suggests that the Providence Journal article and accompanying photograph that lead to Tarpy's identification of defendant was the same article and photograph that prompted Mignone's identification.

dis), testified that she was the woman who had been with defendant when they, and a third man, Roman Burton (Burton), robbed Morrison and Tarpy at gunpoint in Waterplace Park. In addition to corroborating much of Morrison's and Tarpy's testimony, Tribandis recounted that, before the robbery, defendant remarked to her and Burton that it would be funny "if we just hurt, or we robbed somebody, or just scared somebody," and that, after the robbery, defendant threatened to kill her and her unborn child if she went to the police. Tribandis also acknowledged that she had agreed to testify truthfully against defendant in exchange for a deferred sentence on the charges resulting from her role in the robbery.

On the counts stemming from the April 1, 2000, robbery of Morrison and Tarpy, a jury convicted defendant of one count of conspiracy to commit robbery, one count of first-degree robbery, one count of assault with intent to commit robbery, one count of committing a crime of violence with a firearm, and one count of carrying a pistol without a license. On the counts stemming from the robbery of Mignone on June 7, 2000, defendant was found guilty of one count of conspiracy to commit robbery and one count of first-degree robbery. The trial justice sentenced defendant to an aggregate prison term of forty-five years. The defendant now appeals.

## II

## Analysis

## A

### Joinder and Severance

The defendant's primary argument on appeal is easily divided into two sub-argu-

ments. First, defendant argues that the trial justice erred as a matter of law in consolidating these two indictments for a single trial under Rule 13. Second, assuming *arguendo* that joinder under Rule 13 was proper, defendant contends that the trial justice erred when he later declined to grant a severance in accordance with Rule 14. We address each sub-argument *seriatim*.

## 1

### Rule 13 Joinder

██ Before we can reach the merits of this issue, we must address the state's initial contention that defendant has failed to preserve for appeal the issue of whether the indictments were properly joined under Rule 13. Our well-settled "raise or waive" rule requires that, for an issue to be preserved for appeal, a party make an objection that is " 'sufficiently focused so as to call the trial justice's attention to the basis for said objection.' " *State v. Briggs*, 787 A.2d 479, 484 (R.I.2001) (quoting *State v. Oliveira*, 774 A.2d 893, 907 (R.I.2001)). Our review of the record demonstrates that, in response to the state's Rule 13 motion to join the indictments, defense counsel argued against the consolidation of the cases for trial, but on the grounds that the jury pool would have preconceptions concerning defendant's guilt based on his alleged involvement in another high-profile criminal case.[3] Although he briefly attempted to distinguish these indictments from those at issue in cases that the state set forth in its argument, defendant failed to discuss the standards for proper joinder

---

**3.** The defendant's argument before the trial justice on the motion for joinder of the indictments for trial was:

"Your honor, it would be wonderful if we could argue the cases in a vacuum. We

can't. The decision that you make in this case is addressed to your sound discretion, and * * * if there was ever a situation full of potential problems relative to prejudice and ability to give this defendant a fair trial

under Rule 13, nor did he point to a single distinction between the Morrison/Tarpy robbery and the Mignone robbery. In fact, defendant conceded that he could not disagree with the geographic and factual similarities that the state outlined. The trial justice, in granting the state's motion, aptly noted that defendant's objection sounded more of the "historical publicity that has surrounded" defendant than of joinder pursuant to Rule 13. We hold that this objection was not sufficiently focused to call the trial justice's attention to the grounds for objection, and, therefore, the issue was not properly preserved for appeal. *Cf. State v. Hallenbeck*, 878 A.2d 992, 1018 (R.I.2005) (holding that a defendant had waived the issue of whether the admission of a photograph was unduly prejudicial because he had objected to the admission of the photograph at trial only on the grounds of whether it was a fair and accurate representation of the crime scene).

▇▇▇▇ Even if defendant had preserved the issue, we would disagree with his contention that joinder was improper in this instance. Rule 13 instructs that "[t]he Court *may* order two (2) or more indictments, informations, or complaints to be tried together *if* the offenses * * * could have been joined in a single indictment, information, or complaint." (Emphases added.) Therefore, the standard of review to be applied when analyzing the grant of a motion to join together two or more indictments pursuant to Rule 13 has two parts and requires reference to Rule 8 of the Superior Court Rules of Criminal Procedure:

"Our review of a trial justice's decision to join multiple indictments and/or informations for a single trial is a two-step process. 'Because proper joinder under Rule 8(a) is a matter of law, we review *de novo* whether the state properly joined one or more charges in a single indictment * * *.' If joinder is proper, the decision to grant the Rule 13 motion lies within the sound discretion of the trial justice and will not be disturbed absent a showing of a clear abuse of discretion." *State v. Hernandez*, 822 A.2d 915, 918 (R.I.2003) (quoting *State v. Rice*, 755 A.2d 137, 142 (R.I.2000)); *see also State v. Trepanier*, 600 A.2d 1311, 1316 (R.I.1991) (reviewing "a legal determination concerning whether these counts had been properly joined under Rule 8(a)").

this is it. I would suggest to the Court that we cannot ignore what happened last January over at Federal Court. We can't ignore the manner in which identifications in this case were made. We can't ignore the public rancor that followed the decision made by the Judge in Federal Court, both in print and the electronic media. We can't ignore all these issues. This is not the *Rice* case. This is not the *David Laroche* case. * * * I would suggest that * * * even absent joinder in this case it would be most difficult, number one, to select a jury, let alone explain to this jury we need for them on the one hand to ignore what has transpired over the past two years regarding the Federal case, which we're all very familiar with, and yet be judicious and objective enough to be able to consider some of the facts involved in that case which resulted in these cases being brought. It's almost an impossible task for me as a defense counsel and, I would suggest to you it's virtually an impossible task we would be imposing upon the jury.

"I would suggest to Your Honor that since this is addressed to your sound discretion I think what you need [to] weigh is the potential prejudice against the practicality of joining these cases. What [the prosecutor] suggests relative to geography and factual similarities I can't argue with. I think the overriding issue here is going to be those issues that present themselves as a result of the case, although unrelated to this case is, in fact, related to it in a very, very serious way. Therefore, I would respectfully request the motion be denied."

Rule 8(a) provides that two or more offenses may be charged in a single indictment if they fall within one of the following three scenarios: (1) if the offenses charged "are of the same or similar character;" or (2) if the offenses charged "are based on the same act or transaction;" or (3) if the offenses charged are based on two "or more acts or transactions connected together or constituting parts of a common scheme or plan."

We repeatedly have held that offenses of varying degrees of similarity are sufficiently " 'of the same or similar character.' " *See, e.g., Hernandez*, 822 A.2d at 918 (marshaling the fact that four charges were all "of an assaultive nature" and that "the fifth offense, unlawful possession of a firearm, is attributed to the tool used to perpetrate the violence"); *Rice*, 755 A.2d at 143 (concluding that "[e]ach and every count in this indictment related to Rice's sexual assaults or solicitations for sexual acts upon one or the other of these two young girls when they were present on the premises where Rice then resided").

Unquestionably, similarities exist between the Morrison/Tarpy robbery and the Mignone robbery. Both incidents involved the same base criminal offenses: robbery and conspiracy to commit robbery. These crimes occurred within close proximity in downtown Providence, within a two month time span, at a similar time of day, and the victims were close in age. Both robberies were perpetrated by multiple people, in which one person initially distracted the victims from the front, and then others quickly attacked by applying physical force from the rear.

■ Although this case involves two distinct incidents, we deem that the differences outlined by defendant, primarily the fact that the Morrison/Tarpy robbery was conducted with weapons and that defendant worked with a different group of accomplices in each robbery, were insufficient to remove this case from the ambit of Rule 8 as incorporated into Rule 13. The two robberies, therefore, were of a sufficiently similar character to permit joinder of the underlying criminal charges.

To summarize, defendant has failed to preserve for appeal the issue of whether the trial justice erred in consolidating the two indictments for trial. Even if defendant had properly raised the issue below, we would have concluded that the trial justice did not err in consolidating the two indictments.

2

## Rule 14 Severance

■ The defendant argues in the alternative that the trial justice erred when he denied defendant's motion for severance pursuant to Rule 14. The defendant grounds his Rule 14 argument on two contentions. First, defendant maintains that he suffered real and substantial prejudice from the fact that Tribandis, his accomplice in the first robbery, agreed to testify against him, particularly since the state's case in that robbery was much stronger than the evidence relative to the Mignone robbery. Second, defendant argues that the two indictments should have been severed because the evidence concerning each robbery would not have been mutually admissible at separate trials.

■ A determination of whether charges should be severed under Rule 14 lies within the sound discretion of the trial justice. *Hernandez*, 822 A.2d at 920. "[T]he grant or denial of a motion for severance under Rule 14 is not a matter of right." *Rice*, 755 A.2d at 143.

■ Rule 14 provides:

"If it appears that a defendant or the State is prejudiced by a joinder of of-

fenses or of defendants in an indictment, information, or complaint or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires."

"It is not sufficient for the defendant to cite the potential for and the likelihood of prejudice. His burden is to demonstrate *substantial prejudice* resulting from the joinder." *State v. Whitman,* 431 A.2d 1229, 1233 (R.I.1981) (emphasis added). In making this determination, we balance "efficiency and convenience in judicial administration on the one hand and the defendant's right to a fair trial without prejudice on the other." *State v. Patriarca,* 112 R.I. 14, 29, 308 A.2d 300, 311 (1973).

■ Substantial prejudice can occur in the following circumstances:

" '(1) [The defendant] may become embarrassed or confounded in presenting separate defenses; (2) the jury may use the evidence of one of the crimes charged to infer a criminal disposition on the part of the defendant from which is found his guilt of the other crime or crimes charged; or (3) the jury may cumulate the evidence of the various crimes charged and find guilt when, if considered separately, it would not so find.' " *State v. Goodreau* 560 A.2d 318, 321–22 (R.I.1989).

We also remain cognizant of the possibility of " 'a latent feeling of hostility engendered by the charging of several crimes as distinct from only one.' " *Patriarca,* 112 R.I. at 30, 308 A.2d at 311. These concepts have been referred to broadly as "spillover" evidence. *Rice,* 755 A.2d at 142, 144.

■ We now turn to defendant's first contention related to prejudice resulting from joinder. In most instances, severance is not required under Rule 14 when "the evidence related to each one of the counts is straightforward, simple, and distinct." *Id.* at 144. "Experience has proven that juries are able to respond impartially to the trial evidence with the assistance given by instructions from the trial justice." *State v. LaRoche,* 683 A.2d 989, 998 (R.I.1996). In the context of joinder of multiple defendants, we also have stated that "[i]f a reasonable jury is able to distinguish which evidence applies to which defendant, the fact that the proof may be proportionately greater against one defendant is not in and of itself grounds for granting a trial severance." *State v. Rivera,* 706 A.2d 914, 918 (R.I. 1997). It rationally follows that if a reasonable jury is able to distinguish which evidence applies to which incident, then the fact that evidence may be proportionately greater with respect to some of the counts in the indictment is not, standing alone, grounds for severance.

The defendant's contentions, which focus on Tribandis's testimony and the relative strength of the cases, do not convince us that the trial justice abused his discretion in denying defendant's motion to sever. The evidence presented in this trial pertained to two separate occurrences; there was very little overlap in the evidence. To demarcate those incidents and the resulting charges, the trial justice instructed the jury to consider the two incidents separately when deliberating.[4] In light of the

---

4. The trial justice's first case-specific instruction to the jury was as follows:

"Let's go over the charges that have been filed against the defendant, Kenneth Day. He has been charged with various criminal offenses that allegedly occurred on or about April 1st and June 7th of the year 2000. The April 1, 2000 charges include the following: conspiracy to commit robbery, first degree robbery of Kerrie Morrison, assault-

straightforward evidence and a clear jury instruction, we cannot presume that the jury improperly inferred a criminal disposition. We hold that the trial justice did not abuse his discretion in denying defendant's motion to sever upon a finding that the consolidation of the indictments for trial would not give rise to real and substantial prejudice.

We also reject defendant's argument that the evidence of each robbery would not have been admissible at separate trials. In conducting a Rule 14 analysis, this Court has stated that, although other criminal acts may not be admitted to prove a defendant's propensity to commit a certain type of crime, "evidence of other criminal acts would be admissible in order to show the defendant's guilty knowledge, intent, motive, design, plan, scheme, system, or the like." *State v. Lassor*, 555 A.2d 339, 345 (R.I.1989); *see also Rice*, 755 A.2d at 144 (holding that a trial justice had not abused his discretion in denying a defendant's Rule 14 severance motion because, among other reasons, all the counts against that defendant demonstrated his "continued pattern of lewd behavior towards these two young girls with whom he had frequent contact at or inside his home").

Had each indictment been tried separately, the circumstances of the other robbery not before the court may have been allowed into evidence. Because defendant robbed and conspired to rob teenagers on the streets of Providence in a parallel manner, the evidence of each robbery may

ing Matthew Tarpy with the intent of robbing him, committing a crime of violence, namely first degree robbery while armed with a firearm, and unlawfully carrying a pistol without a license. The June 7, 2000 charges include conspiracy to commit robbery, and first degree robbery of Timothy Mignone. Bear in mind that each alleged violation must be considered by you *sepa-*

have been admissible, in the trial justice's discretion, to prove a common plan or scheme. We conclude that defendant has not met his burden on appeal of demonstrating that the trial justice abused his discretion when he denied defendant's motion to sever.

## B

## Expert Witness on Eyewitness Testimony

 The defendant next contends that the trial justice committed reversible error in denying defendant's motion to fund expert testimony concerning the reliability of eyewitness testimony. In the face of a substantial amount of our caselaw to the contrary on this point, defendant asks that we carve out an exception for identifications resulting from newspaper photographs.

 Rule 702 of the Rhode Island Rules of Evidence provides:

"If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of fact or opinion."

"Although an indigent defendant may be entitled to public funding to retain experts 'necessary for an adequate defense,' * * * the actual admissibility of any particular proposed expert testimony should, of course, be addressed in the first instance

*rately,* and the State must prove its case beyond a reasonable doubt as to *each of the violations.* You cannot allow your determination of guilt or innocence on a single charge to control your verdict as to another. The defendant is entitled to your independent consideration of each of the charges." (Emphases added.)

by the trial justice." *State v. Morris,* 744 A.2d 850, 855 (R.I.2000) (quoting *Ake v. Oklahoma,* 470 U.S. 68, 76, 80, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985)). "The trial justice has sole discretion to qualify a witness as an expert," and we will reverse the trial justice's ruling only when he or she has abused his or her discretion. *State v. Werner,* 851 A.2d 1093, 1100 (R.I.2004).

 The *curriculum vitae* of a potential expert witness is ordinarily insufficient "to alert the trial justice to any specific scientific theories that required explanation by an expert." *Id.* In this case, defendant presented to the trial justice the *curriculum vitae* of the potential expert witness, and he then conceded that he did not know what the expert witness would opine about the identifications in this case. The defendant not only failed to identify any of the expert's scientific theories, but he also failed to make the requisite offer of proof about what this evidence would prove or disprove. Taxpayers need not fund a fishing expedition due to the fact that defendant hopes he can land an expert witness who is worth keeping.

Even if defendant had made the requisite offer of proof, it is now well settled in this jurisdiction that the trustworthiness of eyewitness observations is "not beyond the ken of the jurors." *State v. Porraro,* 121 R.I. 882, 892, 404 A.2d 465, 471 (1979). We previously have affirmed the denial of a request for the funding of an expert witness who would have testified about "the effects of stress relative to perception, weapon-focus-attention variables, and witness perception" on an eyewitness's testimony. *Morris,* 744 A.2d at 855. Other cases similarly have affirmed the refusal to admit expert testimony on the reliability of eyewitness identifications. *See, e.g., State v. Sabetta,* 680 A.2d 927, 933 (R.I.1996) (affirming the trial justice's conclusion that "eyewitness identification and memory

were within the comprehension and knowledge of the jurors"); *State v. Gomes,* 604 A.2d 1249, 1256 (R.I.1992) (concluding that expert witness testimony on the issue of eyewitness reliability would mislead the jury).

We decline defendant's invitation to depart from our well-established caselaw simply because the photograph that facilitated defendant's identification was in the newspaper and accompanied by an article reporting, according to defendant's own brief, "the arrest of [defendant] and others in the notorious and horrific murder of two young college students whose weekend date in downtown Providence came to an unspeakably tragic end." There is nothing on the record that convinces us otherwise. We hold that the trial justice did not abuse his discretion in denying defendant's motion for funding.

### Conclusion

For the foregoing reasons, we affirm the judgment of the Superior Court. The record shall be remanded to the Superior Court.